Opinion by
Packel, J.,
This controversy involves the liability of the appellees, Mark and Michael Klausman, on a note executed by their corporation, The Shoe Back, Inc., payable to the bank appellant.[1] The instrument was endorsed as follows:
*402 “Mark Klausman, Sec.
Lionel Klausman, Vice Pres.
Michael Klausman, Pres.
The Shoe Rack
Mark Klausman, Sec.”
The appellant’s complaints asserted that the appellees endorsed in their personal capacities. The appellees by preliminary objections contended they endorsed the note in their representative capacities as officers of The Shoe Rack and that therefore the appellant failed to state a cause of action. The preliminary objections were sustained and the complaints dismissed.
This is not a case of determining whether officers or their corporation should be held liable. The corporation is undoubtedly liable but the question is whether the officers did or did not add their personal liability. The narrow issue presented to our Court is whether it was so clear as a matter of law that the endorsements were given in a representative capacity that the appellant was correctly precluded from introducing evidence to the contrary.
In analyzing the capacity in which endorsements are affixed, it is necessary to consider not only each word and signature within the four corners of the instrument, but also the position, style and arrangement of the whole writing. Why would the appellees have endorsed in a representative capacity after having already signed as makers of the note for their corporation? Just as Judge Watkins observed in Elkay Mfg. Co. v. Chasco Supply Co., 219 Pa. Superior Ct. 530, 535, 281 A. 2d 765, 767 (1971), that it was “illogical and unlikely to have the [corporate] customer act as his own guarantor,” so it is in this case, equally unclear why officers would endorse a note in their official capacity after issuing the same instrument for their corporate principal. Was appellee Mark Klausman en *403 dorsing in a representative capacity not only when he placed his signature immediately beneath the corporate name towards the bottom of the reverse side of the note, but also when he had earlier placed his signature nearly four inches above the business name near the top of the note? Conversely, it can properly be asked why are the official titles after the signatures if there was an intention that there be personal liability. Because answers to these questions do not readily spring from the face of the instrument, this is a classic case of ambiguity.
Prior to the adoption of the Uniform Commercial Code, it was well established that when there is ambiguity whether a signature was affixed in an individual or representative capacity “'and [especially where] the litigation is between the original parties to the instrument, parol evidence is admissible to show the facts and circumstances attending its execution,” in order to resolve that question, Dormant Sav. & Tr. Co. v. Kommer, 338 Pa. 548, 553, 13 A. 2d 525, 527 (1940). This is not a specialized rule of negotiable instruments law but an early recognized principle of general applicability in commercial litigation, Smith v. Philadelphia Nat'l. Bank, 1 Walk. 318 (1877) (though signatures on letters written on bank stationery were followed by corporate title, evidence was admissible to show that correspondence intended an individual transaction.)
This principle is given clear recognition in Section 3-403(3) of the Uniform Commercial Code of April 6, 1953, P. L. 3, as reenacted, 12A P.S. §3-403(3) : “Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.” [Emphasis added]. To hold that appellant should not have the opportunity to prove that the endorsements were made in a personal capaei *404 ty is to read all meaning out of the italicized portion of the above quoted subdivision specially added by the legislature in 1959. The design of the last two paragraphs of the section is to provide norms for ascertaining the actual capacity denoted by ambiguous signatures on a negotiable instrument. Except for subsection 2(a) (agent signing without any indication of representative capacity) it is clear that these standards represent presumptions only because of the words “except as otherwise established.”
We should not attempt to resolve the instant dispute by attempting to force the facts to fit into example (c) of the five examples given in the comment to Section 3-403 which is described as “the unambiguous way to make the representation clear.” We should not overlook that the text of the Code was enacted by the legislature ; the comments were not. Professor Honnold has observed that: “Surely the Comments may be given at least as much weight as an able article or treatise construing the Code. It is equally clear that the Comments do not approach the weight of legislation; if the statutory provisions adopted by the legislature contradict or fail to support the Comments, the Comments must be rejected. The point is significant, for we shall see instances, easily understood in the light of the Comments’ bulk and the many successive revisions of the Code, where the Comments contradict the statute. More frequent are instances of enthusiastic discussion of significant problems on which the statute is silent.” Farnsworth and Honnold, Cases and Materials on Commercial Law, 9 (1968); see Skilton, “Some Comments on the Comments to the Uniform Commercial Code,” 1966 Wis. L. Rev. 597.
In developing commercial law the judicial role is to aid in moulding standards which provide an orderly framework for carrying out the expectations of busi *405 nessmen. Application of this principle to commercial litigation requires a delicate balancing of the truth seeking interest in ascertaining the intent of the parties together with the truth protecting interest in preserving the security of writings free of perjuries and other frauds. In adopting Section 3-403 of the Code the draftsmen and legislators apparently intended to exclude extrinsic evidence of capacity only in the limited case where one signs an instrument without adding any indication of acting in the capacity of an agent.[2] Cases of patent ambiguity, like the instant one, are proper instances for favoring the admission of evidence to discover the true understanding of the parties.
The orders of the lower courts entering judgments for the appellees are reversed and the cases remanded.

 These are consolidated appeals from a judgment obtained in Montgomery County in favor of Mark Klausman and a judgment obtained in Philadelphia County in favor of Michael Klausman.

 Subdivision (2) (a) of §3-403. Tbe other pertinent subdivisions (2) (b) and (3) begin with the words: “Except as otherwise established.”