COMMONWEALTH BANK AND TRUST COMPANY
*vs.* ARTHUR PLOTKIN.

Suffolk.    September 16, 1976. — October 15, 1976.

Present: HENNESSEY, C.J., REARDON, BRAUCHER, KAPLAN, &
WILKINS, JJ.

*Practice, Civil,* Summary judgment. *Bills and Notes,* Indorsement,
Liability of representative.

In an action by a bank against a payee and indorser of a check which
was dishonored for insufficient funds, the defendant was prima facie
liable as indorser under Uniform Commercial Code § 3-403 (2) (b),
and the defendant's affidavit, stating that a vice-president of the
bank "well knew" that the defendant had indorsed the check, de-
posited in a corporation's account, in a representative capacity and
that the defendant had been advised by the bank that the check had
cleared, was insufficient to prevent summary judgment against him
under Rule 56 of the Massachusetts Rules of Civil Procedure. [219-
222]

CONTRACT.   Writ in the Municipal Court of the City of
Boston dated June 18, 1973.

Following removal to the Superior Court, subsequent
transfer to the Municipal Court of the City of Boston, and
retransfer to the Superior Court, a motion for summary
judgment was heard by *Morse, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Shelley M. Draper* for the defendant.
*Joel Lewin* for the plaintiff.

BRAUCHER, J.   The plaintiff bank sues Plotkin on a
check for $6,038 payable to the order of "Arthur Plotkin"
and bearing on its back the stamp "Creative Travel, Inc.
for deposit only in 5-250," above the handwritten signature
"Arthur Plotkin." The check was deposited in the account
of Creative Travel, Inc. (the corporation), and was later

dishonored for insufficient funds. We hold that Plotkin is prima facie liable as indorser under Uniform Commercial Code (G. L. c. 106) § 3-403 (2) (b), and that he has made an insufficient showing to prevent summary judgment against him under Mass. R. Civ. P. 56, 365 Mass. 824 (1974).

The action was brought in the Municipal Court of the City of Boston and was removed to the Superior Court. Then it was transferred to the Municipal Court of the City of Boston under G. L. c. 231, § 102C, for trial. The corporation was added as a defendant and defaulted, and after hearing there was a finding against Plotkin in the amount of the check. On retransfer to the Superior Court summary judgment was entered for the bank against Plotkin, and Plotkin appealed to the Appeals Court. We transferred the case here on our own motion.

The following facts appear without dispute from the parties' affidavits and the exhibits. Plotkin was president and treasurer of the corporation, which had provided services to a business in which Sumner Boches and Frank J. Griesing had interests. In payment for those services Boches issued his personal check dated March 24, 1973, for $6,038 payable to the order of the corporation. That check was deposited in the corporation's account, but was returned for insufficient funds on April 2, 1973. Later Griesing issued the check sued on, dated April 13, 1973, in the same amount payable to the order of Arthur Plotkin. Plotkin deposited it in the same corporate account on April 17, 1973, but it was returned for insufficient funds on April 26, 1973. At Plotkin's request it was redeposited on April 30, but it was again dishonored and charged back to the corporation's account. The resulting overdraft exceeded the amount of the check.

Plotkin's affidavit also states the following. A named vice-president of the plaintiff bank "well knew" that the check in suit was issued in place of the deficient Boches's check and was deposited in the corporation's account. The check in suit was returned for insufficient funds "only after Defendant had been advised by plaintiff bank that

the Griesing check had cleared and that the proceeds were available for use by Creative Travel, Inc. As a consequence checks were issued by the undersigned against that account." The bank had on many prior occasions credited the corporation's account "with checks issued in the name of the undersigned but intended for and deposited by the undersigned as an agent for and to the account of" the corporation. The bank "well knew" it was the corporation and not Plotkin which was entitled to the proceeds of the check. The bank obtained a personal note from Boches for the amount due and accepted payments thereon. The parties have stipulated for a reduction of the judgment appealed from by $100, reflecting the payments received from Boches.

The principal issue argued to us is whether the signature "Arthur Plotkin" on the back of the check was an individual indorsement or was made in a representative capacity. Plotkin claims that the case is within § 3-403 (2) (b): "(2) An authorized representative who signs his own name to an instrument ... (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, ...." He and the bank, as indorser and indorsee, are "immediate parties," he says. The burden is on him to disprove personal liability. *Carleton Ford, Inc.* v. *Oste,* 1 Mass. App. Ct. 819, 819-820 (1973). Cf. *Universal Lightning Rod, Inc.* v. *Rischall Elec. Co.,* 24 Conn. Supp. 399, 401 (Cir. Ct. 1963). But, he argues, he is entitled to a trial of the issue under Mass. R. Civ. P. 56 (e), which requires that he "set forth specific facts showing that there is a genuine issue for trial." See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556 (1976).

For the purposes of the present case, we accept this part of Plotkin's analysis, but we point out that there are a number of difficulties with it. First, § 3-403 (2) seems to be directed to the obligations of the original parties to an instrument rather than to indorsements placed on the instrument after it is completed, since the section refers

to the person "the instrument" names. Decisions in other
States, however, have applied the same rules to irregular
or anomalous indorsements, out of the chain of title, placed
on an instrument before issue. *Weather-Rite, Inc.* v. *South-
dale Pro-Bowl, Inc.*, 301 Minn. 346, 347 (1974). *Central
Trust Co.* v. *J. Gottermeier Dev. Co.*, 65 Misc. 2d 676,
677 (N.Y. Sup. Ct. 1971). *Trenton Trust Co.* v. *Klausman*,
222 Pa. Super. 400, 405 (1972). Perhaps those rules can
be applied by analogy to regular indorsements by payees,
since an indorsement resembles a new instrument written
on the back of the original instrument. See *Heylyn* v.
*Adamson*, 97 Eng. Rep. 503, 504 (K.B. 1758) (Lord Mans-
field); Cormack & Browne, Indorsements After Maturity
and the "New Bill" Doctrine, 30 Ill. L. Rev. 46, 48-57
(1935).

There are further complications. If the check at the time
of deposit bore only one indorsement, that of the corpora-
tion, the indorsement of the payee was missing, and the
check could have been returned by the drawee bank with-
out dishonor. §§ 3-411 (3), 3-507 (3). The missing in-
dorsement could not be supplied under § 4-205 (1) unless
Plotkin rather than the corporation was "the customer."
"Unless otherwise agreed," however, § 3-201 (3) would
give the bank of deposit, once it gave value by permitting
withdrawals, "the specifically enforceable right to have the
unqualified indorsement" of Plotkin as "transferor." On
the other hand, if Plotkin had first transferred the check
to the corporation without indorsement, and the corpora-
tion then transferred it to the bank by indorsement, Plot-
kin was not one of "the immediate parties" to the indorse-
ment transaction within § 3-403 (2) (b).

We pass these difficulties because on Plotkin's analysis
we think he has not met the requirements of Rule 56 (e).
He is competent to testify as to his own intent, and his
affidavit sufficiently shows that he did not intend to be
personally obligated. Cf. *Lunn & Sweet Co.* v. *Wolfman*,
268 Mass. 345, 353 (1929). But that case was "not an in-
stance of attempting to bind the other party to a contract
by undisclosed purposes or secret designs." *Ibid.* Plotkin's

affidavit does not disclose who acted for the bank in the deposit of the check, what disclosure was made of Plotkin's intention, what manifestation of intention was made on behalf of the bank, or what authority existed for such a manifestation. Cf. *Henriques* v. *Franklin Motor Car Co.*, 260 Mass. 518, 519 (1927). Plotkin's statements of what the bank "well knew" fall well short of showing an agreement by the bank to accept for deposit without recourse a check with the payee's indorsement missing. Cf. *Seale* v. *Nichols*, 505 S.W.2d 251, 254-255 (Tex. 1974), where a similar affidavit was held insufficient to prevent summary judgment against a representative as maker of a note.

According to Plotkin's affidavit, he issued checks against the account of the corporation as a consequence of advice by the bank that the Griesing check had cleared. He argues that any loss to the bank was caused by the bank's negligence and that he is therefore not liable, citing §§ 3-502 and 3-601 (2). The affidavit makes no reference to deficiency in presentment or notice of dishonor. His reliance to his detriment on a misrepresentation by the bank might give rise to a defense in the nature of estoppel, but his affidavit makes no showing of any such detriment.

*Judgment affirmed.*