COMMONWEALTH vs. RALPH J. NARDI.

Norfolk.   February 13, 1978. — March 29, 1978.

Present: HALE, C. J., KEVILLE, & BROWN, JJ.

*Practice, Criminal,* Mistrial, Directed verdict, Opening statement by
prosecutor, Instructions to jury. *Evidence,* Hearsay.

At the trial of an indictment charging the defendant with assault by
means of a dangerous weapon, evidence warranted findings that an
occupant of an automobile driven by the defendant had fired a gun
so as to create a reasonable apprehension by two police officers of
receiving an immediate battery and that the defendant aquiesced
and intentionally assisted in the firing of the gun. [181–184]
The judge at a criminal trial did not abuse his discretion in denying
the defendant's motion for a mistrial at the conclusion of the
prosecutor's opening statement in which the prosecutor referred to
testimony of a witness who did not appear before the jury. [184–186]
Brown, J., concurring.
At a criminal trial during which the defense focused upon the possibly
excessive use of force by police officers, the judge did not err in
instructing the jury that the issue of excessive force was relevant
only as it assisted their assessment of the credibility and weight of
the officers' testimony. [186-188]
At a criminal trial a response to a question calling for a police officer's
mental impression during a shooting incident was not inadmissible
hearsay. [188–189]

INDICTMENT found and returned in the Superior Court
on May 19, 1976.

The case was tried before *Brogna, J.*

*Robert A. Stanziani* for the defendant.

*Charles J. Hely,* Assistant District Attorney, for the
Commonwealth.

HALE, C.J. The defendant was found guilty by a jury in
the Superior Court on indictments charging him with
failure to stop for a police officer, operating a motor vehi-

Commonwealth *v.* Nardi.

cle so as to endanger, and assault by means of a danger-
ous weapon, to wit: a revolver.[1] He appeals pursuant to
G. L. c. 278, §§ 33A–33G, and assigns error in several of
the trial judge's rulings and in portions of the charge to
the jury.

1. We address first those assignments of error in which
the defendant challenges the judge's denial of his motions
for a directed verdict, to set aside the verdict, and for a
new trial. The defendant contends that the judge erred in
denying each of those motions because the Common-
wealth had failed to produce sufficient evidence to sus-
tain his conviction on the indictment charging him with
having assaulted one Officer Fillebrown with a danger-
ous weapon.

There was evidence before the jury from which the
following facts could have been found. At about 11:40 P.M.
on September 27, 1975, four Stoughton police officers
were returning to the police station from the vicinity of
Peters Drive in Stoughton where they had arrested an
individual in relation to a disturbance at a house party.
The officers occupied two police cruisers. Along the way
Officer Fillebrown, the driver of the first cruiser, pulled
over on Central Street near its intersection with Peters
Drive to enable the second cruiser in which the prisoner
was being transported to catch up. The second cruiser
soon arrived at the intersection of Peters Drive and Cen-
tral Street. At that moment an automobile owned and
operated by the defendant approached along Central
Street at approximately fifty miles an hour. As the au-
tomobile passed by his cruiser, Fillebrown heard two gun-
shots which came from its direction. Fillebrown's part-
ner, Officer Sullivan, also heard two gunshots and simul-
taneously observed two bursts of light, which he

---

[1] On the assault charge the defendant received a suspended sen-
tence of one year in a house of correction with two years' probation
upon the condition that he relinquish his license to carry firearms.
The other two charges were filed.

characterized as muzzle flashes, emanating from the passenger side of the automobile. The two officers occupying the second cruiser heard one gunshot as the automobile passed. A sixteen year old girl who was babysitting at the time in a house on the corner of Central Street and Peters Drive also heard two loud noises which she described as either automobile backfires or gunshots.

Fillebrown and Sullivan immediately pursued the automobile down Central Street. The chase, which was conducted at speeds up to seventy miles an hour, ended when the defendant pulled his automobile over on the entrance ramp leading from Central Street to Route 24. The officers pulled up to within twenty feet of the automobile and shined a spotlight on its rear window. They demanded over a loudspeaker that the occupants come out with their hands raised. At that moment the automobile began to move. Fillebrown heard another gunshot. Sullivan also heard the gunshot and simultaneously observed another muzzle flash near a hand which had emerged from the passenger side of the automobile. Sullivan also observed that some objects, which appeared to be shells or cartridge casings, were thrown from the passenger side of the automobile onto the area around the entrance ramp.

The officers resumed their pursuit of the automobile south on Route 24 at speeds up to one hundred twenty miles an hour. Although the officers trailed at times by more than one thousand feet, they never lost sight of the automobile. After the chase had continued for about four miles on Route 24, the engine in the defendant's automobile failed. It began emitting smoke and rolled to a stop in the breakdown lane of Route 24. The officers then arrested the defendant and his passenger, one Legaski. Both officers stated that at the time of the arrest, in the course of which the defendant was wounded, the defendant acted belligerently and menacingly. Investigation revealed that the defendant owned a gun and had a license to carry it.

Commonwealth *v.* Nardi.

The defendant argues first that the above evidence was insufficient to sustain his conviction because, aside from the officers' account of the incident, there was no evidence that either he or Legaski possessed or employed a gun on the night in question. He notes that none of the witnesses at trial testified that they had actually seen a gun in his or Legaski's possession during the incident. No bulletholes or other material proof of the alleged shooting was ever produced by the Commonwealth. A postarrest search of the defendant's automobile and its occupants and a search on the day after the incident of the route of the chase by thirty-five officers, some with metal detectors, failed to produce any trace of a gun, cartridges or casings. The defendant testified that on the night of his arrest mechanical problems in his engine had caused his automobile to produce repeated, loud backfires. He submits that the loud noises heard by the witnesses may have originated from that source, and that other testimony by the officers which indicated that shots had been fired from the defendant's automobile was either imagined or fabricated.

The defendant also contends that even if the testimony supported the inference that the officers had been fired upon, there was no evidence which could sustain the defendant's responsibility for the shooting. The officers' testimony indicated that the alleged shots had been fired from the passenger side of the automobile, thereby implying that Legaski alone had done the shooting. The defendant maintains that he could not be held responsible as a principal for the shooting because there was no evidence of his intentional assistance of or participation in Legaski's alleged conduct.

Having reviewed the evidence which was before the jury in a light most favorable to the Commonwealth, *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975), we hold that there was sufficient evidence to permit the jury's verdict that the defendant was guilty of the offense. The officers' testimony, if believed by the jury, was suffi-

cient to support their finding that an occupant of the
defendant's automobile had fired a gun so as to create a
reasonable apprehension by the officers of receiving an
immediate battery. *Commonwealth* v. *Johnson*, 2 Mass.
App. Ct. 877, 878 (1974). In passing on the defendant's
motions the judge need not have been convinced of the
defendant's guilt beyond a reasonable doubt. So long as
there was competent evidence in support of all necessary
elements of the offense, the weight and sufficiency of that
evidence was properly left to the jury's determination.
*Commonwealth* v. *Baron*, 356 Mass. 362, 366 (1969).

Moreover, the evidence of the defendant's flight and
subsequent high speed chase was a sufficient basis for the
jury's inference that the defendant acquiesced and inten-
tionally assisted in the firing of the gun. This inference
in turn supported a finding that the defendant was guilty
of the offense as a principal under a common enterprise
theory. *Commonwealth* v. *Medeiros*, 354 Mass. 193, 198
(1968), cert. denied sub nom. *Bernier* v. *Massachusetts*,
393 U.S. 1058 (1969), and cases cited.

As we consider that the evidence was sufficient to sup-
port the jury's verdict, we find no error in the judge's
denial of the defendant's motions for a directed verdict
and to set aside the verdict. Likewise, we find no error in
the judge's denial of the defendant's motion for a new
trial. A motion for a new trial is addressed to the judge's
discretion, *Commonwealth* v. *Swanson*, 5 Mass. App. Ct.
775 (1977), and there was no abuse of that discretion in
this instance.

2. The defendant assigns next as error the judge's deni-
al of his motion for a mistrial made at the conclusion of
the prosecutor's opening remarks. In his opening state-
ment the prosecutor outlined the evidence which the
Commonwealth intended to introduce at trial. As part of
that synopsis, he stated his expectation that Legaski's
wife would testify that on the night in question she saw
the defendant leave his home armed with a gun. The
defendant contends that the prosecutor made this refer-

ence while on notice that Mrs. Legaski would not so testify. He maintains that a mistrial should have been granted to prevent the jury's consideration of this unsubstantiated and unfairly introduced allegation.

The Commonwealth called Mrs. Legaski as a witness during the trial. On a voir dire examination she denied having seen a gun in the defendant's possession as was alleged by the prosecutor. In subsequent testimony she admitted to having spoken with the defendant's wife after his arrest, but she denied having stated in that conversation that she had earlier seen the defendant with a gun. After Mrs. Legaski completed her testimony the Commonwealth offered to call both a police officer and a security guard to the stand who would testify that they had overheard Mrs. Legaski state to the defendant's wife that she had seen the defendant with a gun. The judge, concerned that the jury would consider Mrs. Legaski's alleged prior inconsistent statement for other than strictly impeachment purposes, excluded that testimony. Neither Mrs. Legaski nor the impeaching witnesses appeared before the jury.

The defendant received notice that Mrs. Legaski would testify at trial from the judge's announcement to that effect during his examination of potential jurors. Upon completion of the jury selection the defendant requested that the judge direct the prosecutor to refrain from referring in his opening to certain disputed evidence. However, the defendant made no request at that time that the prosecutor avoid reference to Mrs. Legaski's anticipated testimony. Under the circumstances the prosecutor could refer in his opening to Mrs. Legaski's anticipated testimony if he in good faith expected to produce that testimony at trial. *Commonwealth* v. *Clark*, 292 Mass. 409, 410 (1935). *Commonwealth* v. *Gardner*, 350 Mass. 664, 668 (1966). *Commonwealth* v. *Martin*, 372 Mass. 412, 419–420 (1977). *Commonwealth* v. *Cheek*, 374 Mass. 613, 617 (1978). ABA Standards Relating to the Prosecution Function § 5.5 (Approved Draft 1971). There was nothing

before the judge, nor is there anything before this court, to indicate that the prosecutor's reference to the anticipated testimony was made in bad faith. *Commonwealth* v. *Hartford*, 346 Mass. 482, 486 (1963). *Commonwealth* v. *DiRoma*, 5 Mass. App. Ct. 853, 854 (1977).

At the time of the defendant's motion for a mistrial the judge did not know what Mrs. Legaski's actual testimony would be. Without that information he could not assess the impact of the prosecutor's opening remarks. The denial of the defendant's motion was not an abuse of discretion. *Commonwealth* v. *Barnett*, 371 Mass. 87, 96 (1976), cert. denied, 429 U.S. 1049 (1977). As the defendant neither renewed his motion for a mistrial after the voir dire examination of Mrs. Legaski nor requested particular instructions concerning the prosecutor's opening remarks, the judge was not called upon to reassess the impact of the prosecutor's opening statement in light of the actual proof at trial. Contrast *Commonwealth* v. *Hartford*, 346 Mass. at 486 n.2. *Commonwealth* v. *Martin*, 372 Mass. at 413–414.

3. The defendant challenges next the propriety of those portions of the judge's instructions to the jury which related to the materiality of the possible employment of excessive force by the police officers during their arrest of the defendant. The judge admonished the jury that the sole purpose of the present trial was to determine the criminal culpability of the defendant and that the question whether the officers' conduct warranted disciplinary proceedings or civil recovery of damages was not before them. He further instructed that the issue of excessive force was relevant in this case only as it assisted the jury in their assessment of the credibility and weight of the officers' testimony. The defendant maintains that those instructions encouraged the jury to reach a verdict at the defendant's expense with a view toward the eventual consequences to the officers in other proceedings arising from the incident.

During the trial considerable testimony was elicited regarding the events which occurred during the defendant's arrest on Route 24. Officers Fillebrown and Sullivan testified that after they had stopped behind the defendant's automobile on Route 24, they repeatedly demanded over a loudspeaker that the occupants come out with their hands raised. They stated that Legaski disembarked from the passenger door but that the defendant remained in the automobile and yelled to Legaski that they need not obey the officers' commands. At that point Fillebrown fired a warning shot into the air. The defendant then came out from the automobile, but instead of raising his hands as ordered, he placed his hands on the windowsill of the automobile. This action by the defendant caused Fillebrown to fire two rounds into the rear window of the defendant's automobile. The defendant then turned suddenly and withdrew his hand from the area of his belt. As the defendant moved, Fillebrown fired two rounds into the defendant's leg. Both the defendant and Legaski were then arrested, and the defendant was transported to a hospital for medical treatment.

The defendant's account of his arrest varied substantially from the officers' testimony. He stated that his unresponsiveness to the officers' commands was not intentional but was caused by his grogginess from having inhaled smoke and fumes caused by his automobile's mechanical failure. He denied having yelled to Legaski and stated that he had done nothing to provoke the shooting. He stated that Fillebrown had fired into the back windshield of his automobile immediately upon his having stepped out from it. As he turned to complain Fillebrown fired three more times — two rounds wounding him in the leg and one round passing by his head.

Throughout the trial the defendant's attorney questioned the justification for the officers' actions during the defendant's arrest. He queried whether Fillebrown had wounded the defendant out of anger rather than self-defense and whether he had previously earned a reputa-

tion for being "trigger-happy." In his closing argument the attorney characterized the prosecution of his client as the culmination of a police coverup of the officers' improper conduct. He made a strong appeal to the jury to reject this coverup and put an end to the officers' irresponsibility by vindicating the defendant.

We consider that in light of the defense strategy of focusing upon the possibly excessive use of force by Officer Fillebrown, the judge's charge limiting the applicability of the testimony concerning Fillebrown's conduct was proper. The instructions to the jury, when viewed as a whole, were fair. *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968). The judge was correct in directing the jury's attention to the issues at hand and away from the extraneous aspects of the possible reprehensibility of the officers' conduct. *Commonwealth* v. *Mutina*, 366 Mass. 810, 817 (1975). *Commonwealth* v. *Ferreira*, 373 Mass. 116, 125 (1977). The judge may have felt compelled to refer to potential disciplinary or civil proceedings against the officers to correct any misimpression left by the defendant's attorney that the conduct of the police, as well as that of the defendant, was on trial in the present proceeding.[2] See *Commonwealth* v. *Burnett*, 371 Mass. 13, 17 (1976).

4. The defendant maintains lastly that the judge erred in allowing Officer Fillebrown to respond on redirect examination to the prosecutor's query, ". . . [I]n your mind, when you shot Mr. Nardi, did you think he was armed?" The defendant's sole contention that the judge's ruling was erroneous because the question called for hearsay evidence is without merit. The rule on hearsay evidence prohibits the admission of a statement made out of court which is offered to prove the truth of what is asserted.

---

[2] Upon the defendant's objection to the judge's charge the judge offered to provide supplementary instructions to the jury that there was presently no indication that any disciplinary proceedings or civil actions for damages had been instituted against the officers with regard to this incident. The defendant declined this offer.

*Commonwealth* v. *DelValle,* 351 Mass. 489, 491 (1966). *Commonwealth* v. *Fiore,* 364 Mass. 819, 824 (1974). There was no out of court statement made here. The challenged question called for the officer's mental impression during the shooting incident. Where one's state of mind is important, a person may testify about it himself. *Carriere* v. *Merrick Lumber Co.,* 203 Mass. 322, 327 (1909). *Commonwealth Bank & Trust Co.* v. *Plotkin,* 371 Mass. 218, 221 (1976).

*Judgment affirmed.*

BROWN, J. (concurring in result). I concur in the result reached by the majority, as I must, because there was "evidence" from which the jury could find the defendant guilty of assault by means of a dangerous weapon. See *Commonwealth* v. *Mangula,* 2 Mass. App. Ct. 785, 786 (1975), and cases cited.

I cannot, however, go along with the majority's reasoning with regard to the prosecutor's remark. Although I do not believe the prosecutor's remark was made in bad faith (compare *Commonwealth* v. *DiRoma,* 5 Mass. App. Ct. 853, 854 [1977], and cases cited), it was negligently made. The record does not show that the prosecutor ever spoke to the witness prior to trial (compare *Commonwealth* v. *Martin,* 372 Mass. 412, 419–420 [1977]); indeed, it suggests that he relied on the hearsay statements of others. Compare *Commonwealth* v. *Cheek,* 374 Mass 613, 617 (1978). This carelessness on the part of the prosecutor is particularly disturbing in this circumstance, as no gun (or shell casings) was introduced in evidence and the defendant claimed that the testimony by the police officers concerning the shots allegedly fired was either imagined or intentionally fabricated. However, as the majority point out, the issue was never presented squarely to the judge;[1] thus, on this record, I am compelled to concur, but in result only and without enthusiasm.

---

[1] It does seem, however, quite reasonable that defense counsel might not have wished to redirect the jury's attention to comments concerning the presence of a gun when none had been introduced in evidence.