DISSENTING OPINION
Dohoney, J.
I respectfully disagree with the position taken by majority and dissent therefrom.
The fact pattern giving rise to this case is most common. The defendant was the sole shareholder and president of a small corporation. On two occasions the corporation wished to borrow money from the plaintiff bank. Pursuant to that desire each time a very common form note was presented for signature. Each time the defendant signed twice. One signature was “New England Office Products Co., Inc. by Janet M. Friel, President” and the other signature was simply “Janet M. Friel”. The defendant now seeks to deny liability by claiming she did not understand she was obligating herself in a personal capacity by virtue of the second signatures. The issue in this case is to determine the legal significance of the so-called second signature by the defendant.
It is well established that one who signs a note in lower right corner is liable as a maker. See Comment to the Uniform Commercial Code, General Laws, Chapter 106, Section 3-402 which states in part as follows:
Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft.
Thus, I would rather simply conclude that the defendant is a co-maker of the note and personally liable thereon.
Therefore, I disagree that this case is governed by General Laws, Chapter 106, Section 3-403. That section relates to a signature by an “authorized representative”. Clearly, the first signature was a signature by such an authorized representative. However, there is nothing to indicate that the second signature was a representative signature.
Even if Section 3-403 were to be applicable, the evidence fails to show any facts of non-personal liability as being “otherwise established between the immediate parties” as regarded by the statute.There is no indication that the plaintiff bank understood or should have understood the defendant was not signing as a personal obligation. The burden here is on the defendant to disprove personal liability. She may have shown that she did not understand herself to be personally liable, but she has shown miserably in proving that this fact was “established between the immediate parties.” The Report is also totally devoid of any evidence showing that the plaintiff bank felt there was no personal liability. The evidence does show why the defendant did not think she was personally liable, but there was no evidence that she communicated this to the bank. Nor was there any evidence that the bank in any way misled the defendant. In short, there was a simple mistake on the part of the defendant.
*52 Additionally, the Uniform Commerical Code has given us other tools to resolve the question of alleged ambiguous signatures. General Laws, Chapter 106, Section 3-402 (which is labelled “Signature in Ambiguous Capacity5’) provides “Unless the instrument clearly indicates that a signature is made in some other capacity, it is an endorsement”(emphasis supplied). If the trial judge felt that there was some ambiguity in the second signature, he was not free to accept parol evidence but was obligated to follow the dictates of this section. Here the instrument does not indicate any other capacity (except as a maker) and thus the defendant would be personally liable.
Our appellate courts have had opportunities to consider General Laws, Chapter 106, Section 3-403(2) (b). These considerations show that the defendant here has failed to bring herself within the protection of section 3-403(b) (2). In Commonwealth Bank and Trust Co. v. Plotkin, 371 Mass. 218 (1976), a corporation had provided services to two individuals. For some reason the individuals made the check for payment payable to the order of Arthur Plotkin. Plotkin was the president and treasurer. The check was stamped “Creative Travel, Inc. — for deposit only in 5-250” over the handwritten signature of Arthur Plotkin. The check was dishonored and the depositing bank was suing Plotkin personally on his endorsement. The court stated
the principal issue argued to us is whether the signature ‘Arthur Plotkin’ on the back of the check was an individual indorsement or was made in a representative capacity. Plotkin claims that the case is within §3-403-(2) (b).
The case was heard on a Motion for Summary Judgment and Plotkin asserted that the bank “well knew” several facts favoring Plotkin. The Supreme Judicial Court stated
Plotkin’s statements of what the bank ‘well knew’ fell well short of showing an agreement by the bank to accept for deposit without recourse a check with the payee’s indorsement missing. Cf. Seale v. Nichols, 505 S.W.2d 251, 254-255 (Tex. 1974), where a similar affidavit was held insufficient to prevent summary judgment against a representative as maker of a note.
Similarly in our case the evidence falls well short of any agreement “well established between parties” as required by General Laws, Chapter 106, Section 3-403(2) (b).
So also in Norfolk County Trust Company v. Vichensky, 5 Mass. App. Ct. 768 (1977), Vichensky was an officer of a corporation whose note was drawn to the order of the plaintiff. The plaintiff asserts liability on the basis of an unqualified signature of the defendant on the reverse side. The case was decided on a Motion for Summary Judgment for the plaintiff. The defendant had contended that General Laws, Chapter 106, Section 3-403(2) (b) permitted him to use j parol evidence to show he was acting in a representative capacity. The Appeals j Court affirmed the judgment and assessed double costs for a pending appeal stating
*53 Contrary to the defendant’s contention, his signature on the back of the note was an indorsement, there being no clear indication within the four corners of the instrument that he was acting in a representative capacity. G.L. c. 106, § 3-402. The defendant’s contention that G.L. c. 106 § 3-403-(2) (b), permits him to demonstrate through parol evidence that he was acting not individually but in a representative capacity is without merit. The official comment to that subsection make clear that ‘[a] signature as in .. . [this case] personally obligates the agent and parol evidence is inadmissible under subsection (2) (a) to disestablish his obligation.’ Comment 3 to § 3-403 of the Uniform Commercial Code, 2 U.L.A. (Master Ed. 1968). See Lumbermen Associates, Inc. v. Palmer, 344 F. Supp. 1129 (E.D. Pa. 1972), aff'd 486 F. 2d 680 (1973)
So also here, there is nothing in the Report showing any facts established by the parties to the effect that the defendant would not be liable.
Lastly, in Carlton Ford, Inc. v. Oste, 1 Mass. App. Ct. 819 (1973) a check was drawn. At the top left of the check was printed “Oste Bros.” The defendant’s signature was in the bottom right corner without any indication of representative capacity. The court felt the defendant was responsible, stating
Under § 3-403 (2) (b), the defendant, even if an agent as he claims, ‘is personally obligated if the instrument (although it) names the person represented [Oste Bros.]— . . . does not show that the . . . [defendant] signed in a representative capacity.’ While under that section it may be ‘otherwise established between the immediate parties,’ § 3-307 (2) provides: ‘When signatures are admitted or established [as in this case]; production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.’
Here the instrument does not show the second signature to be in a representative capacity. In fact, the inference would be that it is not in a representative capacity since it had already been signed in a representative capacity. Thus, under section 3-403 (2) (b) the defendant is personally obligated.
Lastly, an overview of this case clearly indicates liability should be placed against the defendant. It is well recognized that commercial lenders frequently require personal as well as corporate signatures. The forms and methods used here are commonplace. A party should not be permitted to sign their name as an officer and then sign again without any indication of corporate position and then assert that they are not personally liable. There is nothing in the record or in the law to ascribe any meaning to the second signature other than personal liability.