In re APOLLO MOLDED
PRODUCTS, INC., Debtor.

APOLLO MOLDED PRODUCTS,
INC., Plaintiff,

v.

Leonard A. KLEINMAN, Solomon S.
Kleinman, Robert Kokoruda,
Defendants.

Bankruptcy No. 87–40685 JFQ.
Adv. No. 88–4007.

United States Bankruptcy Court,
D. Massachusetts.

March 3, 1988.

9, 1987, is moot.

Joseph H. Reinhardt, Hendel, Collins & Newton, Springfield, Mass., for debtor/plaintiff.

Steven Weiss, Cooley, Shrair, Alpert, Labovitz & Dambrov, P.C., Springfield, Mass., for defendants.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

This case presents the question of whether the principal of a Chapter 11 debtor who

is an accommodation maker with the debtor on a note is entitled to an injunction at the request of the debtor enjoining suit against him on the note by reason of the effect the suit has upon him and derivatively upon the debtor. Frederick J. Roper, Sr. ("Roper") owns 65% of the capital stock of Ro–Dun Corporation ("Rodun"), a holding company which holds all the capital stock of Apollo Molded Products, Inc. (the "Debtor"). Roper is the Debtor's chief executive officer. On May 29, 1984, the defendants sold their 100% stock interest in the Debtor in a transaction which involved the Debtor redeeming some of the stock and Rodun purchasing the balance, at a total purchase price of $1.5 million. The Debtor paid $1.1 million in cash through new financing; the remaining $400,000 was represented by three notes in various sums, each payable to one of the defendants. Each of the notes was signed by the Debtor, Rodun and Roper as co-makers.

The defendants have recently declared defaults under the notes for the purpose of accelerating the total balance owed on all three, a balance which exceeds $200,000. They then began to foreclose upon the Debtor's stock which they held in pledge as security. This precipitated filings of Chapter 11 petitions with this Court by the Debtor and Rodun. Any action to enforce the stock pledge was accordingly enjoined under the automatic stay imposed by 11 U.S.C. § 362. The defendants responded to the Chapter 11 filings by suing Roper in state court and seeking to attach his real estate as security for the payment of any judgment. The Debtor brings this adversary proceeding requesting an injunction against the defendants prosecuting their state action against Roper. Its request for preliminary injunctive relief is now before the Court.

## I. THE COURT'S JURISDICTION TO GRANT INJUNCTIVE RELIEF

The defendants' argument that the Court lacks the jurisdiction to grant the requested injunctive relief may be quickly dispatched. It is of course true that the automatic stay in effect under § 362 enjoins only action against the Debtor or its property. *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–99 (6th Cir. 1983); *Austin v. Unarco Industries*, 705 F.2d 1, 4 (1st Cir.1983). But the Court is armed with the broad power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This power includes the authority to enjoin litigants from pursuing actions in other courts that threaten the integrity of the Debtor's estate. *Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.)*, 801 F.2d 60, 63 (2nd Cir.1986); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir.1986); *In re Davis*, 730 F.2d 176, 184 (5th Cir. 1984). The prohibition contained in 28 U.S.C. § 1481 against a bankruptcy court enjoining "another court" is not applicable to an injunction directed against the litigants. *In re Davis*, 730 F.2d at 184. Section 1481, in any event, has apparently been repealed by § 113 of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (Pub.L. No. 98–353). 2 L. King, *Collier on Bankruptcy* ¶ 105.02 (15th ed. 1987). A complaint seeking an injunction to protect the reorganizational process, moreover, is a core proceeding as a matter "concerning administration of the estate" within the meaning of 28 U.S.C. § 157(b)(2)(A). *Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.)*, *supra.* And the issuance of the injunction is constitutionally valid under the doctrine of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *In re Davis, supra.* The present case is distinguishable from an attempt to enjoin collection of a tax, which must overcome the prohibition against such suits contained in 26 U.S.C. § 7421. *See, e.g., Amtol Corp. v. United States (In re Amtol Corp.)*, 57 B.R. 724 (Bankr.N.D.Ohio 1986).

## II. THE PROPRIETY OF GRANTING INJUNCTIVE RELIEF

The more difficult issue, however, is whether the requested injunctive relief

should be granted. The Debtor asserts that it has various offsetting claims against one of the defendants, Leonard A. Kleinman ("Kleinman"), for breach of a consulting contract, unauthorized withdrawal of pension funds, and defective products. If the requested injunction is not granted, the Debtor maintains, it will have to bring suit against Kleinman on these claims in the same state court in order to vindicate its rights, thus embroiling the Debtor itself in the state court litigation and jeopardizing its ability to proceed with a reorganization in this Court. Presumably the Debtor would seek to have the two actions joined for trial.

We fail to see why the Debtor must or even should enter the fray of the state court litigation. The Debtor argues that if it does not do so, the defendants will likely obtain judgment against Roper who will in turn have recourse against the Debtor. Roper apparently signed the three notes as an accommodation party. *See* Mass.Gen.L. ch. 106, § 3–415. The Debtor implies that its claim against Kleinman would then be lost. But how this would be so is a mystery. The Debtor's claims are independent causes of action which belong to it alone. Even if the claims were asserted in the state court litigation, they could result only in judgment against Kleinman; they would not reduce any judgment the defendants might obtain against Roper or any resulting claim Roper might have against the Debtor. The Debtor, moreover, could 'itigate those claims here by means of filing a counterclaim to the defendants' claim against the Debtor. 28 U.S.C. § 157(b)(2)(C). And for the purpose of making the counterclaim it could file the defendants' claims on their behalf if the defendants failed to do so. Bankr.R. 3004.

▆ The Debtor also says that the injunction is needed because continuation of the suit against Roper will have adverse effects upon him which would seriously impair the Debtor's ability to reorganize. This contention finds support in some of the cases. In *TRS, Inc. v. Peterson Grain & Brokerage Co. (In re TRS, Inc.),* 76 B.R. 805 (Bankr.D.Kan.1987), the debtor's president and 43% stockholder had guaranteed its obligations, which resulted in a judgment against him in state court. He testified that he had virtually no non-exempt assets to pay the judgment except for his stock in the debtor and his salary as president, and that he had little incentive to continue with his duties as president unless execution and levy upon that stock and garnishment of his wages were enjoined. If the creditor was allowed to execute and levy on its judgment, he asserted, he would be forced to file personal bankruptcy, which would likely cause him to lose his stock interest and render his efforts to reorganize the debtor a fruitless personal endeavor. Based largely upon this testimony, the court enjoined execution and levy. *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018 (D.N.M.1982), also involved a request for injunctive relief to prevent a creditor from levying upon judgment obtained against a debtor's president and major stockholder who had guaranteed the debt. The bankruptcy court had found that levy on the judgment "would do significant damage to the Otero Mills plan of reorganization...." *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 21 B.R. 645, 647 (Bankr.D.N.M.1982). *See also id.,* 21 B.R. 777 (Bankr.D.N.M.1982) (decision granting permanent injunction). The district court affirmed because of "the likelihood that such enforcement will affect reorganization by detrimentally pressuring the bankrupt." *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018, 1022 (D.N.M.1982). In *First Federal Savings and Loan Association of Little Rock v. Pettit,* 510 F.Supp. 226 (E.D. Ark.1981), the court enjoined suit against the debtors' relatives who were co-obligors of a mortgage note on a personal residence signed by the Chapter 11 debtors. The court did so on the ground that the action against the relatives might place pressure upon the bankrupts and ultimately adversely affect the reorganization.

We are unpersuaded that the defendants' lawsuit will so destroy Roper's incentive or so affect him psychologically that he will lose the desire or ability to lead the Debtor

through reorganization. One could just as easily surmise that such pressure upon a debtor's principal will galvanize him into exerting his best efforts to bring about an early Chapter 11 plan for the payment of all creditors, including in particular the creditor hounding him on his personal guaranty. Furthermore, if one carries the Debtor's argument to its ultimate conclusion, it goes too far. If one suit on a guaranty is likely to hamper the Debtor's reorganization by diverting its principal's time and energy away from his duties, then *all* major proceedings against the principal, corporate-related or personal, are likely to do the same. If we accepted such reasoning, we would enjoin such matters as divorce proceedings and other suits against corporate officers on personal matters with the same alacrity as the Debtor urges us to exercise in enjoining the suit on the notes here. Such an outcome "stretches beyond the purpose and intent of Chapter 11" and, indeed, of the Code itself. *See Costa and Head Land Co. v. National Bank of Commerce (In re Costa and Head Land Co.),* 68 B.R. 296, 301–02 (N.D.Ala.1986). In any event, the Debtor has presented us with no evidence whatsoever that the effect of this law suit upon Roper will result in irreparable harm to the Debtor or its reorganizational process.

■ The Debtor is undaunted. It contends that regardless of lack of psychosis or loss of incentive, defense of the suit will consume Roper's time, attention and energy, all to the detriment of a reorganization in this Court. We fail to see how. No assertion has been made that Roper has any defense to the action. For all that appears, the case will be resolved through a default judgment or, at most, summary judgment. This situation is a far cry, for example, from what was before the court in *Johns–Manville Corp. v. The Asbestos Litigation Group (In re Johns–Manville Corp.),* 26 B.R. 420 (Bankr.S.D.N.Y.1983), *aff'd* 40 B.R. 219 (S.D.N.Y.1984), where the debtor's officers, directors, and employees were faced with several suits against them and a multitide of discovery demands in numerous cases being prosecuted against other co-defendants. There the court un-

derstandably found that this massive potential drain upon the debtor's personnel was likely to frustrate its reorganizational efforts. *Id.* at 426, 429–30. *Cf. In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D. Utah 1985) (suits against the debtor's employees to collect various business credit card debts presented a sufficient infringement on their ability to operate the business and propose a plan to warrant an injunction of limited duration).

The Debtor does not attempt to link Roper's personal assets to a plan of reorganization by any indication that Roper will fund the plan. In *Lahman Manufacturing Co. v. First National Bank of Aberdeen (In re Lahman Manufacturing Co.),* 33 B.R. 681 (Bankr.S.D.1983), the debtor was unable to finance its Chapter 11 reorganization on its own, and it anticipated using the unencumbered farm real estate of its principals as collateral. The court ruled that a bank's suit against the principals on their guaranty was a sufficient threat to a reorganization to justify injunctive relief; in order to protect the bank, it also enjoined the principals from mortgaging or conveying the property without further order of the court. *Cf. Mahaffey v. E–C–P Arizona, Inc.,* 40 B.R. 469 (Bankr.D.Colo.1984) (injunction denied where guarantor was not a stockholder and there was no evidence of his intention to contribute funds to a plan); *In re Otero Mills, Inc., supra* (principal's intention to contribute personal assets to the reorganization plan warrants injunction against creditor's suit on principal's guarantee).

■ We do not believe, in any event, that the intention of a debtor's principal to devote personal assets to the reorganization should necessarily have the talismatic effect of shielding him from suit on his personal obligations. We agree with much of the analysis of Judge Hall in *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bankr.E.D.N.Y. 1980), who concluded that the debtor must go further and show that a plan calling for a 100% payment to the creditor is imminent, so that a temporary restraint against the creditor taking action will cause little damage to the creditor. Short of those

circumstances, the act of a guarantor or accommodation maker transferring his assets to a debtor in order to facilitate partial payment to the creditor and avoid his own personal liability smacks of a fraudulent transfer. The only inkling we have as to what lies in store for the defendants in the Debtor's plan of reorganization is a negative one, that the Debtor intends to assert offsetting damage claims against one of the defendants. It would seem, moreover, that the defendants' claims could be subject to subordination under the bankruptcy doctrine subordinating stockholder claims for debt due from the corporation on the sale of their stock. *See Robinson v. Wangemann,* 75 F.2d 756 (5th Cir.1935); *Liebowitz v. Columbia Packing Co.,* 56 B.R. 222 (D.Mass.1985); *Reiner v. Washington Plate Glass Co. (In re Washington Plate Glass Co.),* 27 B.R. 550 (D.D.C.1982), *remanded on other grounds,* 711 F.2d 414 (D.C.Cir.1983). Thus the defendants could be seriously damaged if they are delayed in prosecuting their suit against Roper.

We are troubled, furthermore, by the public policy ramifications involved in the issuance of the requested injunction. The observations made by Judge Yacos in a similar case seem sound:

> It has been a cardinal principle of bankruptcy law from the beginning that its effects do not normally benefit those who have not themselves 'come into' the bankruptcy court with their liabilities *and* all their assets.... To violate this principle on the appealing facts of a particular case, where no specific necessity for doing so is set forth, is simply to invite a wholesale restructuring of the expectations of those involved in commercial transactions without any indication from Congress that such a profound change was intended.

*In re Venture Properties, Inc.,* 37 B.R. 175, 177 (Bankr.D.N.H.1984) (emphasis in opinion).

■ In summary, the Debtor has failed to carry its burden on all four of the requirements for the issuance of a preliminary injunction in this circuit, namely that (1) the Debtor will suffer irreparable injury if the preliminary injunction is not granted; (2) such injury outweighs any harm that granting injunctive relief will inflict upon the defendants; (3) the Debtor is likely to prevail on the merits; and (4) the public interest is not likely to be adversely affected by the granting of the injunction. *See, e.g., Lancor v. Lebanon Housing Authority,* 760 F.2d 361, 362 (1st Cir.1985); *Spath v. National Collegiate Athletic Association,* 728 F.2d 25, 27 (1st Cir.1984). We disagree with those courts who have ruled that in the present context the requirement for likely success on the merits means merely that the Chapter 11 debtor must show it will probably be successful in its reorganizational efforts. *See, e.g., Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018, 1021–22 (D.N.M.1982). We see no reason to depart from the traditional requirement of likelihood of ultimate success in the litigation before the court. Whether or not a Chapter 11 debtor will probably be successful in reorganizing seems more relevant to the first requirement, that of irreparable injury if the injunction is not granted.

■ We therefore align ourselves with those courts who have refused to enjoin suit against the debtor's guarantor, even for a very short period of time, absent extraordinary circumstances. *See, e.g., Juneau's Builders Center, Inc. v. First National Bank of Gonzales (In re Juneau's Builders Center, Inc.),* 57 B.R. 254 (Bankr. M.D.La.1986); *Martin v. Norwest Bank Kalispell, N.A. (In re Kalispell Feed & Grain Supply, Inc.),* 55 B.R. 627 (Bankr.D. Mont.1985); *Midatlantic National Bank/Citizens v. Comtek Electronics, Inc. (In re Comtek Electronics, Inc.),* 23 B.R. 449 (Bankr.S.D.N.Y.1982); *In re Larmar Estates, Inc.,* 5 B.R. 328 (Bankr.E.D. N.Y.1980). *Cf. In re Ms. Kipps, Inc.,* 34 B.R. 91 (Bankr.S.D.N.Y.1983) (enjoining suit for non-payment of employee benefits brought against debtor's principal as "necessary and appropriate"); *Old Orchard Investment Co. v. A.D.I. Distributors, Inc. (In re Old Orchard Investment Co.),* 31 B.R. 599 (W.D.Mich.1983) (injunction is appropriate against certain partnership creditors who seek to satisfy debts from individ-

ual partners' assets because such assets are a potential source for payment of all of the partnership's creditors).

Judgment has previously issued.