## In Re STADIUM MANAGEMENT CORPORATION, Debtor.

## STADIUM MANAGEMENT CORPORATION, Plaintiff/Appellee,

### v.

## The CONNECTICUT BANK AND TRUST COMPANY, N.A., Defendant/Appellant.

### Civ. A. No. 88–1431–Mc.

United States District Court, D. Massachusetts.

Nov. 14, 1988.

Monday, September 8, 1986 pursuant to Bankruptcy Rule 9006(a).

Gary W. Cruickshank, Marullo & Barnes, Boston, Mass., for Stadium Management.

Robert M. Gargill, William E. Martin, Choate, Hall & Stewart, Boston, Mass., for Connecticut Bank & Trust Co.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter comes before the Court on appeal from an order of the United States Bankruptcy Court for the District of Massachusetts granting the debtor/appellee, Stadium Management Corporation ("SMC"), a preliminary injunction enjoining appellant, The Connecticut Bank and Trust Company, N.A. ("CBT") from conducting a foreclosure sale of certain property owned by the Commonwealth Sports Properties, Inc. ("CSP"), a subsidiary of the debtor that was not a named party to the adversary proceeding. Said order was issued on May 6, 1988. Briefs have been filed by both parties. The matter was heard by this Court October 17, 1988 and was taken under advisement.

In the proceeding below, the Bankruptcy Court found the following facts relevant to this appeal:

The debtor/appellee, SMC, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court on February 23, 1988. The debtor's primary business is the operation of Sullivan Stadium which is leased from the Town of Foxboro, Massachusetts. CSP, a subsidiary of SMC, is the owner of a parcel of real estate which abuts and encircles Sullivan Stadium on three sides ("CSP parcel"). The CSP parcel is necessary for the continuing operation of SMC's business and for the possibility of a successful reorganization. A small portion of the Stadium actually lies on the CSP parcel, and presently there is relatively unrestricted access to the Stadium from all of the adjacent parking areas. If the use of the CSP parcel by SMC was in any way restricted, the only other access to the Stadium would be over the public highway known as Route 1 in Foxboro. CSP is indebted to appellant, The Connecticut Bank and Trust Company, N.A., in the approximate amount of 8.9 million dollars, 7.5 million dollars of which is secured by a second mortgage on the CSP parcel. SMC is the guarantor of approximately $2,055,-000.00 of the amount of the debt owed by CSP to appellant. The value of the CSP parcel is considerably less than the 7.5 million dollars of the appellant's secured debt for which the CSP parcel is collateral. The fair market value of the CSP parcel, based upon inferences which may be drawn from the evidence introduced regarding the value of certain real estate across the highway from the Stadium, is approximately $700,000.00.

In its brief, appellant points out that another action involving the same parties is pending before Judge Tauro of this Court. *The Connecticut Bank and Trust Company, N.A. v. Stadium Management Corporation, et al,* Civil Action No. 86–2577–T (Tauro, J.) ("the District Court case"). Both CSP and SMC are, by a stipulation

adopted as an order, enjoined from making disposition of the CSP parcel without complying with certain conditions designed to provide for payment of the monies owed to appellant. The District Court case has been stayed by the intervening filing of SMC's Chapter 11 petition. Another action, filed in the Land Court Department of the Massachusetts Trial Court, in which the court authorized appellant to foreclose its mortgage of the CSP parcel, has also been stayed.

In the instant case, appellant offers five essential arguments to support its contention that the injunction entered by the Bankruptcy Court should be lifted.

■ First, appellant says that the Bankruptcy Court lacked jurisdiction under 11 U.S.C. § 105(a) to enjoin the foreclosure sale of the CSP parcel. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The order of the Bankruptcy Court, says appellant, must be necessary or appropriate to carry out the provisions of the Bankruptcy Code. Appellant argues that if the Bankruptcy Court has jurisdiction to enjoin a foreclosure action taken against a non-debtor third party like CSP, where the property of the debtor's estate is not involved, then it has that jurisdiction only because the foreclosure proceeding is "related" to the underlying bankruptcy case.

Here, urges appellant, there is no sufficient nexus to enjoin appellant's foreclosure sale of the CSP parcel. SMC's complaint was premised on the consequences of an encroachment of a small part of Sullivan Stadium on the CSP parcel and on speculation as to what a subsequent owner might or might not do in terms of allowing unfettered access over the parcel

to and from Sullivan Stadium. Appellant claims that, in fact, no rights are lost to SMC through the foreclosure process and that this process has no material impact on the course of SMC's bankruptcy case.

Apart from this lack of impact, argues appellant, relief under section 105(a) is unnecessary because there exists an alternative remedy if, as the Bankruptcy Court has found, the CSP parcel is necessary to the reorganization of SMC. That remedy involves the filing of a Chapter 11 case for CSP. Inquiry into this possibility was wrongfully precluded by the Bankruptcy Court, says appellant.

Finally, as to the jurisdiction issue, appellant asserts that the purpose of the foreclosure action is to collect an independent debt owed by CSP and not by SMC, the debtor. Injunctive relief, says appellant, interferes with its ability to collect this debt, a debt for which SMC is not responsible. Moreover, the power conferred to the Bankruptcy Court by section 105(a) was not intended to confer jurisdiction to enjoin an action against a non-debtor third party on the facts of this case.

In response to this contention, debtor/appellee SMC argues that the Bankruptcy Court determined that the foreclosure sale of the CSP parcel would have a detrimental effect on the debtor's ability to reorganize. "The jurisdictional test is whether the failure to enter the injunction would effect the Bankruptcy estate and would adversely or detrimentally influence or pressure the Debtor through a third party." *Lahman Manufacturing Co., Inc. v. First National Bank of Aberdeen*, 33 B.R. 681, 683 (South Dakota 1983).

■ Applying the law to the facts found by the Bankruptcy Court, I have to agree with appellee SMC that the 'Bankruptcy Court had jurisdiction to issue injunctive relief under 11 U.S.C. § 105(a). Section 105(a) confers broad powers to enter any order, process or judgment necessary to carry out the provisions of Title 11, and this power includes the authority to enjoin appellant from pursuing in other courts (like the Land Court) actions which threat-

en the integrity of SMC's estate. *In Re Apollo Molded Products, Inc.*, 83 B.R. 189, 191 (D.Mass.1988). Furthermore, I accept the Bankruptcy Court's findings of fact and determine that the proceeding below was a "core" proceeding which ultimately served to protect the reorganizational process of the debtor, SMC. Title 28 U.S.C. § 157(b)(2)(A); *id.* This determination disposes of the second of appellant's five arguments, i.e., that the proceeding below did not constitute a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2) and that therefore only an Article III judge could have ordered SMC injunctive relief. *See* 28 U.S.C. § 157(c)(1). Because SMC filed its complaint seeking an injunction to protect its reorganizational process, however, the proceeding below was a "core" proceeding as a matter concerning the administration of the estate within the meaning of 28 U.S.C. § 157(b)(2)(A), and the Bankruptcy Court judge acted well within his authority by entering the order in this case. *In Re Apollo Molded Products, Inc.*, 83 B.R. 189, 191 (D.Mass.1988).

■ The third of appellant's arguments urges that the Bankruptcy Court abused its discretion in entering the order which serves to deprive appellant of its property without due process of law in violation of the Fifth Amendment. The right to foreclosure, it argues, is a property right which cannot be taken without just compensation. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). In the proceeding below, the Bankruptcy Court inferred that appellant's equity in the CSP parcel was only approximately $200,000.00. Appellant avers that the Bankruptcy Court's implicit suggestion that appellant was therefore not harmed or could withstand delay was at best a cavalier treatment of its substantive property rights.

Appellant points to section 362, governing the automatic stay provisions of the Bankruptcy Code, which, appellant claims, sets forth the minimum standard of due process to which it was entitled. 11 U.S.C. § 362. This section provides, in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Appellant says that the protections of section 362 were not afforded to it because the Bankruptcy Court relieved CSP of the need to commence its own Chapter 11 case. Had CSP filed its own petition, appellant argues that it would have been able to take advantage of the adequate protection provisions of section 362 and would have been successful in having the stay lifted. By entering its order under section 105(a), the Bankruptcy Court relieved CSP of the need for filing and "earning" the injunction against appellant's foreclosure. *See, Juneau's Builders Center, Inc. v. First National Bank of Gonzales*, 57 B.R. 254, 256 (M.D.La.1986). This amounts to a "taking" without due process, suggests appellant, and therefore the order of the Bankruptcy Court contravenes the Fifth Amendment.

Debtor/appellee, SMC, states that the issue of whether CSP should have filed a Chapter 11 case in order to stay the foreclosure sale of the CSP parcel was one that the Bankruptcy Court found to be irrelevant and that any contention that appellant would have been successful in lifting the automatic stay in any Chapter 11 case filed by CSP is premature and subject to speculation. Furthermore, asserts SMC, the entry of the preliminary injunction only affects the contractual relationship by and between appellant and CSP, but does not actually deprive appellant of any property rights.

I agree. The CSP parcel is necessary for the debtor's continuing operation of its

business and the possibility of a successful plan of reorganization. Any reference to the necessity of a CSP filing for purposes of satisfying Fifth Amendment due process is not relevant under the circumstances of this case. SMC is the debtor here, not CSP, and the requirements of section 362, as applied to the debtor's case, have been satisfied. The decision of the Bankruptcy Court on this issue must be upheld.

■ Appellant's fourth argument suggests that the Bankruptcy Court abused its discretion in entering the order because it contravenes fundamental purposes and principles of the Bankruptcy Code. The order, appellant alleges, transgressed the Congressional mandate reflected in section 362 as to how similarly situated secured creditors are to be treated. It also made available to CSP benefits of a stay available only to those who are debtors in proceedings under the Bankruptcy Code without requiring CSP to comply with disclosure and other obligations of a debtor under the Code. Again, argues appellant, CSP has not "earned" its stay. *Juneau Builders Center, Inc. v. First National Bank of Gonzales,* 57 B.R. 254, 256 (M.D. La.1986).

SMC counters appellant's argument by citing *In Re Apollo Molded Products, Inc.,* 83 B.R. 189, 191 (D.Mass.1988), in which the United States Bankruptcy Court for the District of Massachusetts recognized that while the automatic stay provisions of section 362 enjoin only actions against the debtor or its property, the court is given broad powers under 11 U.S.C. section 105(a) to carry out the provisions of Title 11. *See generally, In Re Monroe Well Service, Inc.,* 67 B.R. 746, 753 (E.D.Pa. 1986).

Since Title 11 governs the reorganization of the debtor and because I find, as the Bankruptcy Court did, that the preservation of unfettered access to the stadium is necessary for an effective reorganization, I conclude that section 105(a) confers to the Bankruptcy Court the authority to stay the foreclosure and that the Bankruptcy Court did not abuse its discretion in entering its order on this basis. Though it is arguable

that section 362 serves to enjoin only the debtor and its property, *Austin v. Unarco Industries,* 705 F.2d 1, 4 (1st Cir.1983), said order did not contravene the purpose and principles of the Bankruptcy Code.

■ In its fifth and final argument, appellant contends that the order of Bankruptcy Court should not have been entered because the debtor did not meet its burden of proving the prerequisites to the grant of a preliminary injunction. *In Re Monroe Well Service, Inc.,* 67 B.R. 746 (E.D.Pa. 1986) established the test for the issuance of an injunction. *See also, Dore and Associates Contracting Company v. American Druggists Insurance,* 54 B.R. 353 (W.D. Wisc.1985). The burden was upon SMC to prove by a preponderance of the evidence that:

(1) there is a danger of imminent, irreparable harm to the estate or SMC's ability to reorganize;

(2) there is a reasonable likelihood of a successful reorganization;

(3) the harm to SMC outweighs the damage which the injunction causes to appellant:

(4) the public interest in a successful bankruptcy reorganization outweighs other competing social interests.

In its order, the Bankruptcy Court concluded that SMC had met its burden. Having carefully examined the transcript of the May 6, 1988 hearing, I conclude that there was sufficient evidence provided by SMC to support the court's conclusion.

First, there was a danger of imminent, irreparable harm to SMC's ability to reorganize. One witness, Mr. Keith Lowey, controller for SMC since August 1, 1986, testified that as many as 40–60 thousand Stadium patrons would have to enter and exit Sullivan Stadium via Route 1 if some party or entity were to erect a barrier on the CSP parcel (Tr. 27). This would cause large traffic tie-ups, placing the safety of pedestrian patrons and motorists in jeopardy (Tr. 28). The primary focus of the Town of Foxboro in issuing permits for Stadium events is public safety (Tr. 28).

Mr. Lowey also testified that a portion of the CSP parcel runs underneath the northeast corner of the Stadium (Tr. 32) and that the light fixtures in this area would likely have to be taken down if someone other than CSP owned the CSP parcel (Tr. 33). Moreover, it is possible that certain concession stands could not be utilized (Tr. 33) and that another owner would require an "abnormal" amount of rent (Tr. 33–34).

Another witness, Charles Sullivan, chairman of the Board of Directors of SMC and president of CSP, testified that the CSP parcel was important to the viability of the Stadium from the standpoint of customer access and vital human services access such as police, fire, and ambulance service (Tr. 50). He also concluded, based on discussions with various interested purchasers of the SMC leasehold estate and financers of SMC, that the sale or re-financing of SMC's leasehold interest in the Stadium would not be possible without the inclusion of the CSP parcel (Tr. 53). The effect of selling the CSP parcel and the Stadium property at different times, said Sullivan, would be to depreciate the value of both parcels of land (Tr. 57). Finally, if the CSP parcel were to be sold, "it would provide incredible blackmail value for whoever the purchaser was. The purchaser couldn't build any buildings on it, so its only value is blackmail value" (Tr. 61).

Based on the foregoing testimony and the inferences to be drawn from that testimony based on logic and experience, I conclude that the Bankruptcy Court did not abuse its discretion in finding a danger of "imminent, irreparable" harm to SMC's ability to reorganize. *In Re Monroe Well Service, Inc.*, 67 B.R. 746, 752 (E.D.Pa. 1986). A sale of the parcel could result in a threat to public safety. According to the testimony of Mr. Sullivan, public safety concerns would detrimentally affect SMC's ability to obtain licensing for Stadium events (Tr. 55). This in turn, would pose a danger to the ability of SMC to reorganize, conceivably bringing the debtor's business operations to a "total paralysis" (Tr. 55). This testimony, if believed, could have provided the basis for a finding of irreparable harm. I assume that it was believed by the Bankruptcy Court and affirm this finding.

For many of the same reasons, I also uphold the court's finding that the public interest in a successful reorganization of SMC outweighed any competing social interests, i.e., a creditor's ability to collect a debt owed to it. *Id.*

Third, the balance of hardships lies in favor of SMC. I need not restate the testimony concerning the irreparable harm that would have ensued if no injunction order had been issued by the Bankruptcy Court.

Appellant asserts that SMC's evidence of imminent, irreparable harm was premised on "unsupported assumptions and speculation." It also maintains that it has become subject to "tremendous market risks" and "very tangible risks of loss" because of volatile economic and financial environments and because it has been deprived of the opportunity cost of funds it could realize on foreclosure.

Appellant offers an interesting argument, but weighing the possible harm could have been done to SMC against that done to the appellant by the issuance of the order, it appears that appellant's harm was comparatively minimal. The Bankruptcy Court determined that appellant's interest in the CSP parcel was $200,000.00. Any inconvenience done to appellant by the delay in foreclosing the CSP parcel was minor when compared to the danger to the public and to the successful reorganization of SMC.

Finally, SMC has also met its burden of proving the "reasonable likelihood of a successful reorganization." Witness Sullivan testified that since the filing of the Chapter 11 petition, SMC has made efforts to sell its leasehold interest in the Stadium or to put together a refinancing package for purposes of funding a reorganization plan. Mr. Sullivan described at least three parties who had expressed an interest in purchasing the Stadium leasehold interest or in refinancing the debtor corporation (Tr. 47–49). Based on this and other evidence, the Bankruptcy Court correctly determined that there is a reasonable likelihood of the successful reorganization of SMC. The

fact that three parties remained interested in SMC and in the CSP parcel led to at least an inference that this is so.

Accordingly, the order granting a preliminary injunction is affirmed.

SO ORDERED.