Kane, J.
This appeal by defendants, Plymouth Exports, Inc., (“Export”) and William Thurber (“Thurber”), challenges various rulings in favor of the plaintiff, Plymouth-Home National Bank (“Bank”). Those rulings denied Thurber leave to amend his answer and counterclaim, granted summaryjudgment on demand notes executed by Export and guaranteed by Thurber, and allowed entry of final judgement.
The principal question on appeal asks if defendants, by their proofs, raised a genuine issue of material factto avoid summáryjudgment on the demand notes and guaranties. Defendants argüe that by their proofs they sufficiéntly raised modification and novation of the demand notes the Bank sues under and that a trier of facts must resolve their claim that the original demand notes “no longer exist.”
To guide[2] our review, we begin with a study of the pleadings. Plaintiffs complaint, identifying Export as principal and William Thurber and John Raisbeck as sureties, seeks money due under demand notes executed in the winter of 1984. Appended and described in the complaint are three demand notes amounting to ninety-seven thousand dollars carrying interest at prime plus one. and one-half percent. The signed-off terms of these notes provide for immediate payment without notice or demand “if there be such a change in the condition of affairs (financial or otherwise) of any maker, endorser or guarantor, asín the opinion of the holder will impair its security or increase its risk.” Demand and notice ofnonpayment are waived under the guaranties thatgo onto establish agreement by Messrs. Raisbeck andThurber thatinthecase of default they “shall become immediate [ly] liable.. .withoutnotice, without suit, and without any steps... taken or conditions... performed by the bank .. .”[3] Suit, according tp the complaint, arose in the spring of 1987 upon the Bank learning that Export was no longer in business; that John Raisbeck was back in his native England after unloading practically all of his American assets; and that Thurber's financial statement to the Bank listing property in Plymouth was false.
An answer by Thurber and Export admitted the authenticity of the notes while defending on theabsence of prejudice or demand.Byway of counterclaim, Thurber and Export charged the Bank with abuse of process by bringing suit and seeking attachments. Some three months later, while summary judgment motions were pending, Thurber sought to supplement his answer and counterclaim. By the new *30 answer, Thurber would continue to grant the authenticity of the notes and guaranties; would not deny his false representation concerning the Plymouth property; and would agree that the Bank in 1987 discovered that Raisbeck, an Export officer, was now in England after virtually selling off his U.S. assets. What would be added beyond a string of affirmative defenses, including accord and satisfaction, would be the identification of Thurber as the source of the Bank's awareness of Raisbeck's exodus and an account of discussions between Thurber and the Bank "concerning the financial status of . . . Export and its obligations to the Bank.” By a new counterclaim setting forth a 93A claim, Thurber would explicitly agree that the Bank in 1987, through Thurber, became aware of Export's financial difficulties brought on by the missteps of its officer Raisbeck and were also alerted to Raisbeck's move back to England after unloading his American assets except for a Piper aircraft that Thurber asked the Bank "to attach.” (emphasis added) Seemingly, Thurber goes on to complain that the Bank failed to attach the aircraft and lulled defendants into forgoing legal steps against Raisbeck's remaining assets by signs that the Bank was discarding the original demand notes in favor of new agreements anchored by promises between third parties for the infusion of new capital to Thurber.
In November, the Bank had moved for summary judgment on the notes, on Thurber's guaranty, and on the abuse of process claims. Before the motion judge were three affidavits of the Bank's vice president coupled with the notes and guaranties; on the other side lay an affidavit of William Thurber. The proofs agree that by the beginning of 1987 the notes' principal exceeded seventy-two thousand dollars, and it is uncontradicted that the Bank at this time sought financial information which brought forth the news that Thurber did not hold title to the Plymouth property; that Raisbeck, practically stripped of U.S. assets, had returned to his native England;and that Export was now a “dormant, non-operating company with virtually no assets.” Thurber's affidavit concedes telling the Bank of Export's current financial difficulties and adds thatThurber contemporaneously pointed the finger at Raisbeck as the cause of such difficulties by such miscues as an extravagant extension of credit to ungrateful customers. Worried over holding the bag, Thurber avers that he then informed the Bank of Raisbeck's remaining asset, a Piper aircraft, and wanted the Bank to attach it.
Two paragraphs of Thurber's affidavit appear to be the foothold for the modification/novation claims. Without precisely identifying parties to conversations while intimating that the dialogue involved the Bank's Commercial Loan Officer, Brian Wood, Thurber relates that in the spring of 1987 the Bank, now aware of multiple holes in its security blanket, expressed “satisfaction” with new arrangements by Wesley Pietrasik and a company closely allied with Thurber under which Pietrasik would infuse up to twenty-two hundred dollars ($2,200) a month to Thurber who would use it for paying interest and principal on the Bank's demand notes. From conversations with the “Bank,” particularly Mr. Wood, Thurber's affidavit relates that the Bank found this arrangement satisfactory and only required written confirmation ofPietrasik's agreement. Not disclosed in Thurber's affidavit is what would become of the original agreements between the Bank and Export. Omitted from the affidavit is any disclosure of further steps taken to “enter” and confirm the contract with Pietrasik. This lone affidavit fails even to disclose what authority Export granted Thurber to make promises with the Bank or discuss Wood's authority to enter into a modification or novation of the Bank's demand notes.
I. Summary Tudgment
“Summary judgment is a ‘derice to make possible the prompt disposition of controversies in their merits without a trial, if in essence there is no real dispute as to the salientfacts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) quoting in part 3 W.W. BARRON & A HOLTZOFF, FEDERAL PRACTICE AND PROCEDURE (Rules ed.) §1231, at 96 (Wrightrev. ed. 1958). Itis the moving party's burden “to show by credible evidence *31 from his affidavits and other supporting materials that there is no genuine issue of materialfact and thathe is entitled, as a matter of law, to a judgment.... On the other hand, if the moving party shows that there is no issue for trial, the opposing party must respond and allege specific facts which establish that there is a genuine triable issue, or summary judgment (if appropriate in all other respects) will be entered against him. The parties1 respective burdens are designed to discourage both ‘utterly unjustified motions for summary judgmenf and ‘specious denials or sham defenses’.... One undesirable consequence of the multitude of cases applying the rule is that too often ... courts have looked, not to the rule itself, but to colorful glosses upon it which have developed in the reported opinions, as that it does not provide for ‘trial by affidavif in that motions under the rule are to be denied whenever there is ‘the slightest doubt’ as to the facts. [See Clark, Special Problems in Drafting and Interpreting Procedural Codes and Rules, 3 Vand. L. Rev. 493, 502-505 (1950)]” (Community National Bank v. Dawes, 369 Mass. 550, 553, 554 (1976) (emphasis added) quoting in part from 3 W.W. BARRON & A. HOLTZOFF, FEDERAL PRACTICE & PROCEDURE (Rules Edition) § 1231, at 96 (Wright rev. ed. 1958).
We now turn to the Trial Court's summary judgment with respect to these demand notes. “Indebtedness evidenced by a demand note becomes due as soon as the note is delivered. An action for its enforcement may be maintained without any previous demand.” Bielandski v. Westfield Savings Bank, 313 Mass. 577, 580 (1943). Also see Cantor v. Newton, 4 Mass. App. Ct. 686 (1976); Spencer Companies v. Chase Manhattan Bank N.A., 83 BR 194 (1987). Demand and notice not being conditions of enforcement, language waiving notice and demand is mere suiplusage. Charlestown Five Cents Savings Bank v. Wolf, 309 Mass. 547 (1941). Nevertheless, “parties to a lending arrangement can agree that a note will become due and payable only after a formal demand is made. Moreover, the mere fact that the parties chose to label the instruments which evidence their obligations as demand notes does not automatically mean that no prior demand is required. Where the terms and conditions of a so-called demand note indicate that the parties intended the obligation to become due and payable upon the happening of afuture event, the debt is not mature upon the execution of the note. The obligation matures only when the agreed-upon event occurs. Kersten v. Continental Bank, 129 Ariz. 44, 628 P. 2d 592, 598 (1981); Peterson v. Vallen National Bank of Phoenix, 102 Ariz. 434, 432 P. 2d 446 (1967).” Spencer Companies v. Chase Manhatten Bank, supra, at 198.
There being no dispute here on the notes or on the occurrence of the agreed-upon' event malting the notes due and payable, this case is well suited for summary judgment unless there exists a genuine issue of modification or novation whose burden ofproof at trial would rest with áeíená&nts. Johnston v. Holiday Inns, Inc., 565 F. 2d 790, 796 (1st cir. 1977). Novation requires an agreement “of all parties to the new contract, the extinguishment of the old contract, and a valid new contract” Larson v. Jeffrey-Nichols Motor Co., 279 Mass. 362, 366 (1932). “There is no novation until the creditor accepts the new arrangement in full substitution for the foriner one and thus completely releases the old debt.” Tudor Press, Inc. v. University Distrib. Co., 292 Mass. 339, 341 (1935). Discharge of the original agreemeiii'can only be shown by proof” ... of a clear and unequivocal intent on the part ujrthe [creditor] to do so.” Johnston v. Holiday Inns, Inc., supra, at 796. Grantifíg hljmf defendants1 facts as true and drawing from those facts all favorable inferenbek(thfei.:e is no genuine claim of novation. Novation requiring extinguishmeritc‘df’brigjn:al agreements is argued by defendants to lie on a record devoid of any:|^jdehceW abandonment of notes still held by the bank. Without donning a.éfWmffiJtyJífnS, what evidence is there of any agreement of discarding the deitiah,&riiotgs;^nd replacing them with agreements involving third-party pronúséá^Bfmievv -cajiítál? merely be supplementary assurances for payment of principalckn8 interest oh the original notes. ^ ‘
*32 Defendants' modification claims are complicated by difficulties in maintaining that the dealings between the parties represent anything more than negotiations and that third-party promises can represent consideration to modify these notes. Certainly, a note can be modified through an oral agreement supported by consideration. First Pennsylvania Mortgage Trust v. Dorchester Savings Bank, 395 Mass. 614 (1985). But an agreement to reach an agreement modifying these notes “is a contradiction in terms and imposes no obligations.” Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935). Such an agreement “to agree in the future.. . which does not specify essential terms ordinarily will not be enforceable.” Air Technology Corp. v. General Electric Co., 347 Mass. 613, 626 (1964). Yet, “ ‘mutual manifestations of assentthat are in themselves sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; but other facts may show that the manifestations are merely preliminary expressions_' ” Coan v. Holbrook, 327 Mass. 221, 224 (1951) quoting RESTATEMENT: CONTRACTS, §26. What distinguishes imperfect negotiations from agreements that only lack memorialization are the presence of agreement on significant issues and indicators that the subsequent writing is but aformalify. Id.; Goren v. Royal Investments, Inc., 25 Mass. App. Ct. 137, 142, 143 (1987).
What terms modifying these notes can it be said that the Bank and Export agreed to? Would the note be restructured to eliminate the clause allowing the Bank practically boundless discretion to sue? Would there be different principal payments or interest rates or guaranties? Obviously, these questions were not resolved; and more importantly, the writing to be delivered was more than a memorialization of the parties1 intent but represented proof of third party agreements which may have been evanescent. Indeed, Thurber's affidavit describes Pietrasik's position as merely agreeing to enter a contract.
Even if a modification occurred, there exists a begrudging attitude to construe such modifications as eliminating a holder's ability to sue on the note. Central Bank v. Willard, 34 Mass. (17 Pick.) 154 (1835); Oxford Bank v. Lewis, 25 Mass. (8 Pick.) 457 (1829). For example, an oral agreement to delay suit will not, upon the passing of time, disable theh older from bringing suit. Id., at 457. Any promise to forbear will, in any event, not be enforceable unless the debtor's promise directly bears upon the note he seeks to áelzy. Jennings v. Chase and Others, 92 Mass. (10 Allen) 526 (1865). Apromise to forbear grounded on a debtor's promise concerning matters apart from the note, even if beneficial to the creditor, will not, despite fulfillment, disable the creditor from suing under the original note. Id.
Assuming an enforceable agreement involving third parties thatThurber could offer as consideration for modifying the notes, the Bank's promise in return was, at most, a promise to forbear while confirmation was written up and delivered. Such a promise to forbear, not indexed by any time line, can only be viewed as providing a reasonable time for the other side to formalize and deliver its supposedly in-place promises. See Powers, Inc. v. Wayside, Inc. of Falmouth, 343 Mass. 686, 691 (1962). Certainly by the beginning of May, this promise to forbear had vanished and the Bank was free to sue.
Even if all of these difficulties could be resolved in favor of defendants, there remains the problem of authority. On this record, even if there be sufficient proof thatThurber, a comaker of the notes, could without Raisbeck's consent modify the notes, what proof is there of sufficient authority on the part of Wood to agree to these modifications. See Commonwealth Bank and Trust Company v. Plotkin, 371 Mass. 218, 222 (1976); Federal National Bank v. O'Connell, 305 Mass. 559, 565 (1940). Without detailing how, except for elliptical references to “conversations”, Thurber, in a vague and general way, avers that the Bank was satisfied with these new arrangements. Such bare offers of proof fall far short of making out “specific facts” that would create a genuine issue of material fact that the Bank and Thurber *33 modified these demand notes. See Commonwealth Bank and Trust Co. v. Plotkin, Supra.
II. Motion for Leave
Where an answer to “[a] complaint ha[s] already been filed, the judge . . . possesses some measure of discretion whether to allow or deny [a] motion to amend.” Evans Products Co. v. D.J. Development Corp., 6 Mass. App. Ct. 306, 309 (1978). Reasons justifying denial include: “ ‘undue delay, badfaith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party... futility of amendment ....”’ Goulet v. Whiten Machine Works, Inc. 399 Mass. 547, 549, 550 (1987), quoting from Castellucci v. United States Fidelity & Guar. Co., 372 Mass. 288, 289 (1977). Futility certainly applies here, as the amendments would not defeat summary judgment.
In its original counterclaim, Export charged abuse of process whichinlightof our decision on the notes would fail with or without amendment, but this amendment does not seek supplementation of the abuse of process claim, but rather introduction of a 93A action. As the facts underlying this 93A claim were known for months and the motion to amend came when a motion for summary judgmeiit was pending, denial ofleave to amend was notin error. Commonwealth v. Andover, 378 Mass. 370, 374, 375 (1979).
III. Entry of Separate Tudgment
Without citation of authority, defendants devote three sentences to their claim of error on entry of final judgment. As this is a matter of discretion, there is no reason on the record to find error in the ruling below. She Enterprise, Inc. v. License Commission of Worcester, 10 Mass. App. Ct. 696, 697 (1980).
Accordingly, this court affirms the Trial Court's grant of summary judgment, entry of final judgment and denial of Thurber's motion to file an amended answer and counterclaim.

 Godbout v. Cousens, 396 Mass. 254, 263 (1985).

 “The undersigned further agree(s) that without notice... and without affecting the liability hereunder, theBank may enfo'rceits rights againsttheObligerand/ormay release, substitute, orreceive security and/ or surrender documents, grant extensions, renewals, and indulgences and/or compose, compromise, or settle with the Obligor, and in general thatno act of theBank which may affectits rights against the Obligor shall in any way or fashion modify or impair the liability hereunder.”