## In re JUNEAU'S BUILDERS CENTER, INC., Debtor.

## JUNEAU'S BUILDERS CENTER, INC., Plaintiff,

v.

## FIRST NATIONAL BANK OF GONZALES, Defendant.

**Adv. No. 85–0099.**
**Related Case No. 85–00307.**

United States Bankruptcy Court,
M.D. Louisiana.

Jan. 27, 1986.

James J. Zito, Baton Rouge, La., for plaintiff.

R. Ryland Percy, III, Gonzales, La., for defendant.

## MEMORANDUM OPINION

### I. Jurisdiction of the Court

WESLEY W. STEEN, Bankruptcy Judge.

This is a proceeding arising under Title 11 U.S.C. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (G); pursuant to 28 U.S.C. § 157(b)(1), the Bankruptcy Judge for this district may hear and determine all core proceedings arising in a case under Title 11 referred under 28 U.S.C. § 157(a), and the Bankruptcy Judge may enter appropriate orders and judgments.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### II. Facts of the Case

The Debtor is a Louisiana corporation engaged in a business known as a "Builder's Center"; the Debtor conducts its business in premises that it leases, land and buildings, from William and Sylvia Juneau (hereinafter "Juneau"). Juneau also owns 100% of the Debtor's equity interests. Juneau gave a mortgage on the leased premises to secure Juneau's note to the First National Bank of Gonzales (hereinafter the "Bank"); the note is in default. Juneau is not a debtor in any case before the bankruptcy court. The Bank began foreclosure proceedings in state court against Juneau subsequent to the date on which the Debtor's petition was filed.

No written lease between the Debtor and Juneau was alleged nor was one introduced into evidence; there is no allegation or proof that there is a lease with a fixed term. No rent was alleged or proved, either as due or as having been paid. However, the uncontradicted assertion and testimony is that the Debtor leases 4.29 acres from Juneau. Therefore, the Court finds as fact that there is a lease of the premises for an unspecified term at a rental not shown at trial, under which rentals may or may not have been paid and may or may not be due.

Testimony at trial established that the Debtor only occupies part of the 4.29 acres. The remainder is occupied by several other retail establishments whose owners also lease their premises from Juneau.

Valuation testimony was vague. The property might or might not be worth

enough to protect the creditor adequately with an "equity cushion." For reasons set forth below, the Court need not make a finding of fact at this time with regard to this issue.

The Debtor filed this complaint seeking (i) damages for violation of the stay imposed by 11 U.S.C. § 362;[1] and (ii) an injunction under § 105 to prevent further foreclosure proceedings. The Court declined to issue the injunction and denies the prayer for damages. The complaint was dismissed by order entered July 29, 1985.

### III. No Violation of the Stay

■ The Defendant's foreclosure action was a proceeding to collect a debt owed by Juneau; its objective was foreclosure on Juneau's property. Section 362(a) prohibits actions against the debtor, actions against property of the debtor, and actions against property of the estate. Since there was no act or an action against the Debtor, against the property of the Debtor, or against property of the estate, there was no violation of the stay.[2]

### IV. An Injunction is not Appropriate

The stay effected by § 362 is a carefully balanced[3] instrument to protect the Debtor and its creditors. The statutory stay involves institutional and statutory safe-guards that govern the administration of the estate. These institutional and statutory safeguards include the stay of *all* creditors and actions against property of the estate, the requirement of court approval for substantial transactions by the beneficiary of the stay, and the provision of information about the Debtor and creditor participation in the debtor's financial affairs. The safeguards afford at least minimal protection against harm resulting directly from the stay. Only with great caution should a court grant an injunction under § 105 that effectively extends the stay to actions against third parties because such an extension is necessarily naked of the protections carefully woven into § 362.

In addition to the protection concomitant with the § 362 stay, the stay must, in some sense, be "earned"[4] by the beneficiary of the stay submitting to the invasive authority of the bankruptcy court into his private financial life. This requirement assures a comprehensive commitment of the beneficiary's assets to the satisfaction of his obligations, a fundamental aspect of the debtor/creditor readjustment process that justifies the extraordinary effect of a stay of creditor pursuit of self-interest. Absent such comprehensive jurisdiction and control over the debtor, the potential for debtor mischief[5] is substantial, too substantial to

---

1. All statutory references later in this opinion are to Title 11, United States Code, unless otherwise indicated. The Debtor alleged that Defendant violated the stay by attempting to foreclose on Juneau's property after the Debtor's Chapter 11 petition was filed. The Debtor alleged that such action is a violation of the stay because the Debtor leases the property from Juneau.

2. *Lynch v. Johns-Manville,* 710 F.2d 1194 (6th Cir.,1983). Referring to § 362(a), the court said: "... said provision facially stays proceedings 'against the debtor' and fails to intimate, even tangentially, that the stay could be interpreted as including any defendant other than the debtor ... " 710 F.2d 1194, 1196. The court continued: "Nothing in the legislative history counsels that the automatic stay should be invoked in a manner which would advance the interests of some third party ... rather than the debtor or its creditors. This Court concurs with the district court's conclusion that 'it would distort congressional (sic) purpose to hold that a third party solvent co-defendant should be shielded against his creditors by a device intend-

ed for the protection of the insolvent debtor' and creditors thereof." 710 F.2d 1194, 1197. *Lynch* is easily distinguishable on its facts because the plaintiffs in that case could easily proceed without effect on the debtor; in the case at bar, after foreclosure there might well have been an action to evict. The present issue, however, is whether the foreclosure, *per se,* was a violation of the stay. The *Lynch* reasoning is persuasive. Whether a subsequent eviction without relief from the stay would have constituted a violation of the stay is not now before the Court.

3. *See* §§ 361, 362(d) and (e).

4. *In re Venture Properties, Inc.,* 10 CBC 2d 169, 37 B.R. 175 (Bankruptcy, N.H., 1984); *In re O.H. Lewis Co., Inc.,* 40 B.R. 531 (Bankruptcy, N.H., 1984).

5. It is not the likelihood for irreparable damage that compels this result, but the remarkable ease with which it could occur. One might

invoke an injunction absent truly unusual circumstances.

There is a contrary line of cases, most of which follow *In re Otero Mills*, 21 B.R. 777 (Bkrtcy., D.N.M., 1982). The bankruptcy court in that case enjoined a bank from taking a judgment against the debtor's president and stockholder; the officer's liability was as guarantor of the debtor's indebtedness. The court held that § 105 of the Bankruptcy Code allows a bankruptcy court on complaint by the debtor to enjoin creditor actions against third parties when the debtor demonstrates:

"(1) Irreparable harm to the bankruptcy estate if the injunction does not issue;

"(2) Strong likelihood of success on the merits;" [the court apparently had in mind the successful confirmation and perhaps consummation of a plan of reorganization] and

"(3) No harm or minimal harm to the other party or parties." 21 B.R. 777, 779.

These three criteria for issuance of an injunction are the most often cited parts of the case. Often overlooked is the reasoning by which the court concluded that it had authority to issue the injunction. The court recited that § 105 authorizes the bankruptcy court to act as necessary to carry out title 11; that power, reasoned the court, in accord with prior authority, includes the power to enjoin. The court then said that the power to enjoin actions against co-debtors or guarantors is limited:

"To so enjoin a creditor's action against a third party, the court must find that failure to enjoin would affect the bankruptcy estate and would adversely or detrimentally influence and pressure the debt-

or through that third party ... This power to enjoin assures that a creditor may not do indirectly that which he is forbidden to do directly." 21 B.R. 777, 778.

Before considering the validity of the reasoning in *Otero Mills*, it is instructive to classify the cases that have followed its reasoning. The first group of cases (the "secondary liability" cases) involves third parties who are secondarily liable on obligations for which the debtor is primarily liable; in these cases the third parties are guarantors and sureties. The second group of cases (the "derivative liability" cases) is closely related; in this group of cases, the third party has independent liability, but only in legal concept. In financial origin, the third party's liability derives from the debtor's financial troubles. The third group of cases (the "related party" cases) involves true independent liability; the third party's obligation is truly independent of the debtor, but the third party is related to the debtor in such a way that an injunction is sought on the grounds that pursuit of the related third party would somehow affect the estate.

*Otero Mills* is the quintessential example of the secondary liability cases. The theme in this classification is that collection against the third party should be stayed because the principal obligor (the debtor) will pay the obligation through the plan. Not only did the debtor in *Otero Mills* assert that the indebtedness was to be satisfied under the plan, it also alleged that the plan would call for sale of the third party's asset and the contribution of the sales proceeds to the estate for payment of creditors; it was this asset on which the bank wanted to foreclose; [6] the injunction

easily imagine foreclosure by other creditors resulting in *Durrett* fraudulent conveyances, 621 F.2d 201 (5th Cir.1980), planned or inadvertent preferential transfers that become unavoidable by the passage of time, continuing business losses that occur without creditor knowledge or court authority to order safeguards. Each of these, and countless others, is the potential result of damage that could occur to the one creditor who is stayed when other creditors are not and when the debtor is not required to

operate under the strictures of the Bankruptcy Code.

6. It is unclear in *Otero Mills* how what property of the third party was to be sold, and it is also unclear how the creditor sought to execute on that property. Perhaps the guarantor had given a mortgage to secure the guaranty or perhaps all parties simply "understood" that the creditor would proceed after judgment to proceed against certain specific property.

would, allegedly, preserve this asset for the benefit of the foreclosing creditor, the other creditors, and the debtor *as well as* the third party. When there was no proposed contribution of the third party's property to the estate, an injunction was denied; it is insufficient merely to assert that an injunction is needed to prevent the officer/shareholder/guarantors from spending time defending against personal liability instead of devoting their attention to the debtor's business. "... the mere status of the non-debtor as a principal of the debtor has been held as insufficient justification for staying litigation against him." *In re Keyco, Inc.*, 13 BCD 25, 27 (Bkrtcy., E.D.N.Y., 1985).

The derivative liability cases differ from the secondary liability cases in that the third party's liability is separate from the debtor's obligations; the derivative liability cases differ from the independent liability cases in that the third party's liability is a result of the debtor's financial problems. One of these derivative liability situations is the responsible officer penalty for employment taxes. One court has enjoined collection of the penalty, *In re the Original Wild West Foods, Inc.*, 45 B.R. 202 (Bkrtcy., W.D.Tex.,1984). Another court declined the request to do so: *In re O.H. Lewis Co., Inc.*, 40 B.R. 531 (Bkrtcy., D.N.H., 1984). An injunction will not issue to prohibit state court determination and collection of the alleged independent liability of a corporate officer in tort for knowingly issuing a debtor's worthless check. *In re Sondra*, 44 B.R. 205 (Bkrtcy., E.D. Pa., 1984).

In the third group of cases, the third party is related to the debtor, but the cause of action asserted against the third party is not directly involved with the debtor or the estate. The court, *In re Venture Properties*, 37 B.R. 175 (Bkrtcy., D.N.H., 1984) declined to issue an injunction to protect a non-debtor partnership's property merely because the debtor was the general partner. But in *Lion Capital Group*, 44 B.R. 690 (Bkrtcy., S.D.N.Y., 1984) the court enjoined a fraud action against related parties because failure to stay the litigation would result in irreparable injury to the bankruptcy estate resulting from collateral estopped on cause of action also being litigated by the debtor and because of inability of the debtor to conduct discovery.

There would appear to be no common thread running through these cases. The cases that grant an injunction state that they do so to prevent irreparable injury to the estate; *Lion Capital* and *Otero Mills* are the best examples. The proof of this irreparable injury has been less than overwhelming. In *Otero Mills*, the proof consisted merely of a contention that a plan would be filed, that the plan would call for an orderly sale of the third party's property, that such an orderly sale would produce a greater price than a foreclosure sale, and that the plan yet to be filed would call for the greater price to be contributed by the third party to the debtor to effect a reorganization; since a plan had not yet been filed, no doubt the proof of this claim was slim.

*Otero's* point of departure is reasonable: an injunction is available only in limited circumstances to protect a third party, and those limited circumstances require a showing that the bankruptcy estate will be adversely affected. But the most important part of *Otero's* fundamental assumptions is the concept that to warrant an injunction, the adverse influence must be such to effectively pressure the debtor through a third party to accomplish indirectly what the creditor may not accomplish directly.

■ To get an injunction against a creditor prohibiting an action against a third party, therefore, the debtor must show that the creditor is not pursuing his legitimate right to collect from the third party, but rather is using the action against the third party primarily to pressure the debtor. One can imagine the possibility of frivolous lawsuits, harassing conduct, actions that have no potential for recovery even if successful; no doubt there are other possibilities.

Merely to allege that the action against the third party has an adverse effect on the

debtor, however, is insufficient. Most likely all actions against related parties impact the debtor adversely.

The three so-called tests in *Otero Mills* (irreparable injury, likelihood of success on the merits, no harm to party enjoined) are also insufficient. They are reasonable tests for the issuance of *any* injunction. But the question of injunctions under § 105 against third party actions goes to the issue of jurisdiction under the Bankruptcy Code and the breadth to be given that law. That is an issue requiring more analysis than merely whether the court should act. The privilege of a stay against creditor action should carry with it the burden of debtor regulation; one without the other is inappropriate.

Because of the grounds for this ruling, this adversary proceeding will be dismissed.