In re PACKERS' COLD STORAGE, INC., Debtor.

PACKERS' COLD STORAGE, INC., Plaintiff,

v.

BAYVIEW TRUCKING, INC.; a California corporation; Independent Contract Carriers, a California corporation; St Freight Systems, a California corporation dba Certified Express Company; Westway Motor Freight, Inc; and Inco Express, Inc., Defendants.

Bankruptcy No. SA 85–04190 RP.
Adv. No. SA 86–0400 RP.

United States Bankruptcy Court, C.D. California.

Argued May 30, 1986.

Decided Aug. 15, 1986.

Mark Wray of Duffern H. Helsing, Inc., Tustin, Cal., for plaintiff.

Jeffrey L. Farano of Farano & Kieviet, Anaheim, Cal., for Inco Exp., Inc.

Ann M. Pougiales of Pougiales & Loughran, San Francisco, Cal., for Bayview Truck, Inc., Independent Contract Carriers, St Freight Systems and Westway Motor Freight, Inc.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION AND DISMISSING ADVERSARY PROCEEDING

RALPH G. PAGTER, Bankruptcy Judge.

Debtor-in-possession's motion for a preliminary injunction came on regularly for hearing on May 20, 1986. Mark Wray appeared on behalf of the debtor-in-possession Packers' Cold Storage, Inc. ("Packers'"). Jeff Farano appeared on behalf of respondent Inco Express, Inc. and interested party Illini. Ann Pougalies appeared on behalf of respondents Bayview Trucking, Inc., Independent Contract Carriers, St. Freight Systems and Westway Motor Freight, Inc. At the conclusion of the May 20 hearing, the court ordered supplemental briefs and continued the matter to May 30, 1986.

On May 30 each of the aforementioned counsel appeared. At the conclusion of this hearing, the court took the matter under submission. For the reasons stated below, the motion for a preliminary injunction is denied and the instant adversary proceeding is dismissed.

### FACTS

Packers' is in the business of providing refrigerated and nonrefrigerated storage space. Packers' filed its voluntary Chapter 11 petition on October 15, 1985 and remains both debtor and debtor-in-possession herein.

In addition to providing storage space, Packers' also arranges transportation of goods stored in its warehouses for "pooling customers". Pooling customers are those customers whose shipments from the warehouse constitute less-than-truckload quantities. By combining such shipments, the customers receive the benefit of lower, pro-rata truckload rates, rather than the higher less-than-truckload shipping rates.

Pooling customers provide a significant portion of Packers' business. Near the end of April, 1986, Packers' had between thirty-five and forty pooling accounts. Aside from these numbers, however, Packers' introduced no evidence regarding the extent its business is dependent upon pooling customers.

When a pooling customer wished to retrieve its goods or have them delivered to a third party, the customer contacted Packers', which contacted a motor carrier to arrange for transportation. Each of the named respondents is a duly authorized motor carrier that had provided motor transportation of goods pursuant to this arrangement. Interested party Illini is also a motor carrier that has provided such transportation.

Typically, the motor carrier billed Packers' for the transportation charges, and submitted the endorsed straight bills of lading as delivery receipts. When Packers' received the necessary documentation, it pro-rated the total bill per customer. Pack-

ers' then billed each customer for the shipping.

Both prepetition and postpetition a number of pooling customers have received bills and demands for payment from the respondents. Three independent postpetition collection actions have been filed against pooling customer Stouffer Foods by respondents Independent Contract Carriers, Bayview Trucking, Inc. and St. Freight and are pending in state court.

According to Packers', certain unspecified pooling customers have become "irate" concerning double billing for transportation. Packers' Secretary and Vice President of Administration declares that the billing problems have resulted in Packers' losing a number of pooling customers, and that others are threatening to leave if these difficulties are not resolved. Packers', however, has presented no evidence to independently corrobrate these conclusions.

No evidence has been presented indicating that any of the pooling customers or motor carrier respondents are insiders of or otherwise related to the debtor herein.

On July 18, 1986, this court entered an order authorizing Packers' to sell its leasehold interest in the La Habra warehouse free and clear of liens. The sale was consummated August 8, 1986. The proceeds of sale, $1,420,072 have been placed in an interest-bearing account pending further order of this court.

On August 11, 1986, this court entered an order shortening time for debtor's motion to dismiss its bankruptcy case. The motion is set for hearing on August 18, and seeks dismissal of the case conditioned upon payment in full of all noncontingent, undisputed claims and scheduled liabilities.

## DISCUSSION OF LAW

Packers' seeks a preliminary injunction prohibiting the respondent carriers from implementing any efforts to collect prepetition freight charges from its pooling customers. Packers' relies on section 105(a) of the Bankruptcy Code as authority for issuance of the requested injunction.

### A. Subject Matter Jurisdiction

This court has subject matter jurisdiction over civil proceeding arising under title 11 or arising in or related to a case under title 11. 28 U.S.C. §§ 1334, 157; General Order 266 of the United States District Court for the Central District of California.

The only Code provision that expressly protects nondebtors is section 1301, which stays actions to collect consumer debts against co-debtors in Chapter 13 cases. 11 U.S.C. § 1301. Since the instant case is under Chapter 11, this provision is inapplicable. Section 362(a) does not stay actions against nondebtors.

■ Section 105(a) of the Code authorizes the court to issue any order that is necessary or appropriate to carry out the provisions of title 11. 11 U.S.C. § 105(a). Although some courts have construed section 105(a) as conferring equitable jurisdiction on the bankruptcy and district courts, the better view is that section 105(a) is not a jurisdictional statute. Instead, section 105(a) merely authorizes the bankruptcy or district courts to issue orders required to implement the substantive provisions of the Code. *See United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir.1986). Section 105(a) does not create substantive rights otherwise unavailable, or grant the court an unrestricted license to do equity. *Id.* at 1308.

Since no substantive provisions of the Code authorize issuance of the requested order, the motion does not arise under title 11.

■ Although Bankruptcy Rule 7001 requires initiation of an adversary proceeding to obtain injunctive relief, commencing such a proceeding does not confer "arising in" jurisdiction on this court. Rather than arising herein, the collection actions at issue arose in state court against nondebtor defendants by nondebtor plaintiffs. The other collection efforts also arose outside of the bankruptcy case. Hence, "arising in" jurisdiction is inapplicable.

If this court has subject matter jurisdiction to issue the requested order it must be

"related to" jurisdiction. Numerous reported decisions exist in which bankruptcy courts have enjoined actions against principals of Chapter 11 debtors. In most of these cases, the injunctions issued because the pending actions or other collection efforts substantially threatened the reorganization effort either financially or administratively. *See e.g. In re Arrow Huss, Inc.,* 51 B.R. 853 (Bankr.D.Utah 1985) (actions against officers of debtor corporation stayed because diverting energies from reorganization process); *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 25 B.R. 1018 (D.N.M.1982) (action against president of corporate debtor who guaranteed corporate obligations stayed because president to contribute substantial assets to fund plan).

In this District, only two reported decisions appear to exist concerning injunctions against nondebtor third parties. In *In re Equity Funding Corporation,* 396 F.Supp. 1266 (C.D.Cal.1975) the district court enjoined, pursuant to section 2(a)(15) of the Bankruptcy Act, an action against debtor's subsidiaries. The court held that it had jurisdiction to issue the injunction because the pending action would frustrate the reorganization process by preventing consummation of the proposed plan. The court alternatively held that it had jurisdiction because the subsidiaries were the alter egos of the debtor, thereby bringing the property held by the subsidiaries within the court's jurisdiction.

In *Jonas v. Newman (In re Comark, Ltd.),* 53 B.R. 945 (Bankr.C.D.Cal.1985), this court issued an injunction prohibiting further prosecution of actions against the debtor's general partners. This court found subject matter jurisdiction in that the trustee had initiated a proceeding against the general partners pursuant to section 723 of the Code. The action against the general partners threatened to cause a substantial adverse financial impact on the estate.

In both Central District cases the requested injunctions issued because the party to be protected was closely related to the debtor and the continuation of the collection efforts would have a severe financial impact on the estate.

In the instant proceeding, the parties to be protected do not have a close relationship to the debtor. None of the pooling customers is related to or insiders of the debtor. The only affiliation between the pooling customers and the debtor is that they do business with the debtor.

Although debtor has indicated that it has between thirty-five and forty pooling accounts, debtor has failed to present evidence that loss of such accounts would result in severe financial hardship which threatens the reorganization process.

Applying the more general standards specified in the non-Central District decisions, it becomes equally apparent that this court does not have jurisdiction to issue the injunction. Since the pooling customers are unrelated to the debtor, continuation of the actions does not threaten the administration of the estate. Furthermore, the financial impact is unclear based upon the evidence presented. Moreover, it is apparent that debtor is not attempting to fund a plan of reorganization from revenues derived substantially from its pooling customers.

In *Juneau's Builders Center, Inc. v. First National Bank of Gonzales (In re Juneau's Builders Center, Inc.),* 57 B.R. 254 (Bankr.M.D.La.1986), the court dismissed an adversary proceeding brought by the debtor to enjoin a foreclosure action brought by the bank against debtor's lessors, who were the principals of the debtor coporation. The court concluded that any action against a third party which has an adverse effect on the debtor is insufficient to confer the requisite jurisdiction. *Id.* at 258. Instead, the debtor must show that the creditor is not pursuing his legitimate right to collect from the third party and that the action is being prosecuted primarily to pressure the debtor. *Id.*

In the instant case, the carriers may have a legitimate right to collect directly from the pooling customers. Moreover,

the actions do no appear to be designed to harass or pressure the debtor.

Although the debtor may suffer some adverse impact from the collection efforts by the respondents, this alone is insufficient to confer subject matter jurisdiction to issue the requested injunction. Therefore, the motion is DENIED and instant adversary proceeding is DISMISSED.

IT IS SO ORDERED.