The **ESTATE OF Miller CARR, brought by Daisy CARR, as Representative of the Estate, and Daisy Carr, Individually, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. EP–06–CV–00179–KC.

United States District Court, W.D. Texas, El Paso Division.

March 2, 2007.

Walter L. Boyaki, Miranda & Boyaki, El Paso, TX, for Plaintiff.

Katherine A. Lehmann, U.S. Attorney's Office, El Paso, TX, for Defendant.

## ORDER

KATHLEEN CARDONE, District Judge.

On this date, the Court considered "Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment" ("Defendant's Motion"). For the reasons set forth herein, Defendant's Motion is **GRANTED**.

## I. BACKGROUND

The instant case involves a claim by the Estate of Miller Carr, represented by Daisy Carr, and Daisy Carr, individually, ("Plaintiff") against the United States of America ("Defendant") for medical negligence.

On September 24, 2003, Miller Carr retained the services of Walter L. Boyaki ("Boyaki") for injuries and damages resulting from medical negligence, which he allegedly suffered between August 2002 and July 2003. Def.'s Proposed Undisputed Facts 1 (citing Def.'s Ex. 1); Pl.'s Resp. to Proposed Undisputed Facts I.1 (admitting the same). Shortly thereafter, on October 3, 2003, Miller Carr filed an individual administrative claim with Defendant, alleging medical malpractice for failing to properly diagnose, treat, and operate on his esophageal cancer. Def.'s Proposed Undisputed Facts 2 (citing Def.'s Exs. 1, 2, and 4); Pl.'s Resp. to Proposed Undisputed Facts I.2 (admitting the same). Miller Carr then passed away on March 5, 2004. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss or in the Alternative for Summ. J., Ex. B. ("Pl.'s Resp.").

On March 24, 2004, Plaintiff signed an administrative claim form against Defendant, alleging medical malpractice and wrongful death for failing to properly diagnose and treat esophageal and other cancer in her deceased husband, Miller Carr. Def.'s Proposed Undisputed Facts, Ex. 3.

Plaintiff filed this claim with the Army Claims Service on March 26, 2004, thereby amending Miller Carr's administrative claim of October 3, 2003. *Id.*

On April 30, 2004, Plaintiff signed the contract, which was initially signed by her husband, retaining Boyaki as counsel in the medical malpractice case. Def.'s Proposed Undisputed Facts 4 (citing Def.'s Ex. 1); Pl.'s Resp. to Proposed Undisputed Facts I.4 (admitting the same).

On February 4, 2005, Defendant denied Plaintiff's administrative claim by certified letter. Def.'s Proposed Undisputed Facts 5 (citing Def.'s Ex. 4); Pl.'s Resp. to Proposed Undisputed Facts I.5 (admitting the same). In this certified letter, Defendant advised Plaintiff of her right to file suit in district court, or to request reconsideration from the Department of Veterans Affairs General Counsel ("VA"), within six months. Def.'s Proposed Undisputed Facts 5 (citing Def.'s Ex. 4); Pl.'s Resp. to Proposed Undisputed Facts I.5 (admitting the same).

On June 20, 2005, Plaintiff, individually, filed a bankruptcy petition under Chapter 13 of the United States Bankruptcy Code, with the United States Bankruptcy Court for the Western District of Texas in El Paso, cause no. 05–31403. Def.'s Proposed Undisputed Facts 6 (citing Def.'s Ex. 5); Pl.'s Resp. to Proposed Undisputed Facts I.6 (admitting the same).

Thereafter, on August 2, 2005, Plaintiff filed suit against Defendant in the United States District Court for the Western District of Texas for medical negligence. Def.'s Proposed Undisputed Facts, Ex. 6. The judge assigned to this case was the Honorable Frank Montalvo. *Id.* On this same date, Plaintiff also requested reconsideration from the VA. Def.'s Proposed Undisputed Facts, Ex. 7.

On August 29, 2005, Plaintiff filed an "Amended Schedules and Summary" in the United States Bankruptcy Court, listing the wrongful death suit against the Veterans Affairs Medical Clinic as exempt personal property of an unknown value. *In re Daisy D. Carr*, No. 05–31403 (Bankr.W.D. Tex. filed June 20, 2006), doc. no. 8. The United States Bankruptcy Court entered an order confirming Plaintiff's bankruptcy plan on November 28, 2005. *Id.*, doc. no. 10.

On October 12, 2005, Plaintiff moved for a voluntary dismissal without prejudice of her federal district court case pending before Judge Montalvo. Def.'s Proposed Undisputed Facts 8 (citing Def.'s Ex. 8); Pl.'s Resp. to Proposed Undisputed Facts I.8 (admitting the same). On October 14, 2005, the VA denied Plaintiff's request for reconsideration by certified letter. Def.'s Proposed Undisputed Facts 9 (citing Def.'s Ex. 9); Pl.'s Resp. to Proposed Undisputed Facts I.9 (admitting the same). Judge Montalvo granted Plaintiff's request for voluntary dismissal without prejudice on October 20, 2005. Def.'s Proposed Undisputed Facts 10 (citing Def.'s Ex. 10); Pl.'s Resp. to Proposed Undisputed Facts I.10 (admitting the same).

On January 30, 2006, Boyaki contacted Plaintiff's bankruptcy attorney, Carl Johnson ("Johnson"), to both inform Johnson that Boyaki would file suit for the death of Miller Carr and to request "the appropriate paperwork" in light of the pending bankruptcy. Pl.'s Resp., Ex. B; Def.'s Reply to Pl.'s Resp. to Proposed Undisputed Facts II.2 (admitting the contents of the unauthenticated letter attached to Plaintiff's Response, without objecting to it). Johnson contacted the Bankruptcy Trustee, Stuart C. Cox ("Trustee"), via email on February 23, 2006. Pl.'s Resp., Ex. B; Def.'s Reply to Pl.'s Resp. to Proposed Undisputed Facts II.2 (admitting the contents of the unauthenticated email attached to Plaintiff's Response, without objecting to it). Johnson informed the

Trustee that he would be amending the bankruptcy schedules because he "just learned that the Debtor ha[d] a wrongful death claim against the VA," even though the "Amended Schedules and Summary" of August 29, 2005 already included the wrongful death suit as an asset. Pl.'s Resp., Ex. B; Def.'s Reply to Pl.'s Resp. to Proposed Undisputed Facts II.2 (admitting the contents of the unauthenticated email attached to Plaintiff's Response, without objecting to it).

On March 7, 2006, the Trustee wrote to Boyaki informing him that the commencement of the bankruptcy created an estate consisting of all legal or equitable interests of the Debtor, and hence that any proceeds of the wrongful death suit would be property belonging to this bankruptcy estate. Pl.'s Resp., Ex. B; Def.'s Reply to Pl.'s Resp. to Proposed Undisputed Facts II.2 (admitting the contents of the unauthenticated letter attached to Plaintiff's Response, without objecting to it). The Trustee advised Boyaki that he would need to obtain approval from both the Trustee and the United States Bankruptcy Court in order to pursue the wrongful death action in federal district court. Pl.'s Resp., Ex. B; Def.'s Reply to Pl.'s Resp. to Proposed Undisputed Facts II.2 (admitting the contents of the unauthenticated letter attached to Plaintiff's Response, without objecting to it).

On April 4, 2006, Plaintiff filed "Debtor's Motion to Approve Employment of Counsel" with the United States Bankruptcy Court. Pl.'s Resp. Ex. B. In this motion, Plaintiff represented that she had retained Boyaki after the death of her husband, in order to provide adequate representation of her legal rights in a matter relating to her husband's medical malpractice claim against Defendant. *Id.* She requested that the United States Bankruptcy Court approve the employment of Boyaki to perform the professional services required in connection with the civil case. *Id.* The United States Bankruptcy Court approved the employment of Boyaki "as counsel for the Debtor in a civil case" on May 3, 2006. *Id.*

On May 18, 2006, Plaintiff filed the instant action in federal district court, alleging violations of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 *et seq.*

## II. DISCUSSION

### A. Standards

Defendant has filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. The standards for each are discussed below:

### 1. Motion to dismiss

Federal courts are courts of limited jurisdiction. *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of the United States,* 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute, federal courts lack the power to adjudicate claims. *Id.* A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). FED.R.CIV.P. 12(b)(1).

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge, because a court must have jurisdiction before determining the validity of a claim. *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994). In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.,* 957 F.2d 178, 181 (5th Cir.1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed

facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. United States and Drug Enforcement Admin.,* 74 F.3d 657, 659 (5th Cir.1996).

■ The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the plaintiff's complaint. *Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir.1981). When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Id.* When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must submit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *Middle S. Energy, Inc. v. City of New Orleans,* 800 F.2d 488, 490 (5th Cir.1986).

A motion to dismiss pursuant to Rule 12(b)(6), on the other hand, challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. FED.R.CIV.P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true, and view them in a light most favorable to the plaintiff. *Id.; Calhoun v. Hargrove,* 312 F.3d 730, 733 (5th Cir.2002). A court will dismiss a complaint pursuant to Rule 12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *S. Christian Leadership Conference v. Supreme Court of Louisiana,* 252 F.3d 781, 786 (5th Cir.2001).

■ When matters outside the pleadings are considered, a motion to dismiss pursuant to Rule 12(b)(6) must be treated as a motion for summary judgment, with Rule 56's requirements of notice and an opportunity to respond. FED.R.CIV.P.

12(b); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 283 (5th Cir.1993); *see Scanlan v. Tex. A & M Univ.,* 343 F.3d 533, 539 (5th Cir.2003) (noting that district court should have converted the motion to dismiss into a motion for summary judgment because it considered evidence external to the pleadings).

**2. Summary judgment**

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990). Once the movant carries the initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston,* 922 F.2d 1183, 1187 (5th Cir.1991).

Summary judgment is required if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other

words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Statute of Limitations

Defendant argues that Plaintiff filed suit outside the six month limitations period allowed under the Federal Tort Claims Act ("FTCA"), and thus her claims are time-barred. Def.'s Mot. 2. Specifically, Defendant argues that under the FTCA, Plaintiff was required to file suit in federal district court within six months from either the date her claim was denied by the VA or from the date the VA denied a valid request for reconsideration of its denial of her claim. *Id.* She failed to do so, and thus Defendant argues that her claim is barred. *Id.* Defendant further argues that neither 11 U.S.C. § 108(a) ("section 108(a)") nor § 362 ("section 362") extend the six month limitations period. *Id.* at 8–10; Def.'s Reply to Pl.'s Resp. to Def.'s Mot. 1–5 ("Def.'s Reply").

Plaintiff first asserts that Boyaki pursues the instant case with the permission of, and on behalf of, the Trustee. Pl.'s Resp. 2. Because of this, and pursuant to section 108(a), Plaintiff argues that she is entitled to a two-year statute of limitations, thus preserving the timeliness of her suit. *Id.* Alternatively, Plaintiff argues that the United States Bankruptcy Court issued an automatic stay order pursuant to section 362, thus preserving the timeliness of her suit. *Id.*

█ The FTCA acts as a limited waiver of the sovereign immunity of the United States. *Johnston v. United States*, 85 F.3d 217, 218–19 (5th Cir.1996). With some exceptions, the FTCA provides that the United States is liable in tort for certain damages caused by the negligence of any employee of the Government " 'if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' " *Id.* at 219. While substantive state law determines whether a cause of action exists, federal law governs the statute of limitations. *Id.*

With respect to the statute of limitations, the FTCA provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b); *Flory v. United States*, 138 F.3d 157, 159 (5th Cir.1998).

█ Although this statute is phrased in the disjunctive, it requires that a claimant first file an administrative claim within two years after the claim accrues, and then file suit only after the claim has been denied. *Houston v. United States Postal Serv.*, 823 F.2d 896, 902–04 (5th Cir.1987); *Willis v. United States*, 719 F.2d 608 (2d Cir.1983); *see Schuler v. United States*, 628 F.2d 199, 201 (D.C.Cir.1980) ("Though the section is not happily drafted, common sense and the legislative history tell us that it requires the claimant to both file the claim with the agency within two years after accrual of the claim and then to file a complaint in the District Court within six months after the agency denies the claim."). Additionally, "[p]rior to the commencement of suit and prior to the expiration of the 6–month period provided in 28 U.S.C. 2401(b), a claimant ... may file a written request with the agency for reconsideration of a final denial of a claim...." 28 C.F.R. § 14.9(b) (2007). If a claimant chooses to seek reconsideration, he or she must file suit no later than six months after the date

of mailing of the notification of denial of reconsideration. 28 C.F.R. § 14.9(a)-(b); *see Houston*, 823 F.2d at 904 ("We strongly emphasize ... that in FTCA cases prudent plaintiffs will always institute a fresh suit against the United States in federal court sometime in the six months that follow the administrative denial."). In essence, "a suit instituted within two years from the date the claim accrued, but more than six months after the notice by registered mail of the denial of the claim [is] barred by section 2401(b)...." *Childers v. United States*, 442 F.2d 1299, 1301 (5th Cir.1971).

■■■ This limitations period is jurisdictional. *Flory*, 138 F.3d at 159. Because the Government's exposure to liability can be no greater than the doctrine of sovereign immunity permits, "[e]quitable considerations that may waive or toll limitations periods in litigation between private parties do not have that same effect when suit is brought against the sovereign." *Houston*, 823 F.2d at 902. A waiver of the Government's sovereign immunity, such as the FTCA, must be strictly construed in favor of the sovereign. *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996); *Metro. Life Ins. Co. v. Atkins*, 225 F.3d 510, 511 (5th Cir. 2000). In addition, the limitations period continues to run during the pendency of earlier actions that have been voluntarily dismissed, because a voluntary dismissal leaves the parties as though the action had never been brought. *Hoosier Bancorp of Ind. v. Rasmussen*, 90 F.3d 180, 184 (7th Cir.1996); *Brown v. Hartshorne Pub. Sch. Dist. # 1*, 926 F.2d 959, 961 (10th Cir. 1991); *Davis v. Smith's Transfer, Inc.*, 841 F.2d 139, 140 (6th Cir.1988).

In the instant case, Plaintiff filed an amended claim with the VA on March 26, 2004, which claim was denied on February 4, 2005. Thereafter, on August 2, 2005, Plaintiff requested reconsideration of the denial and filed suit in federal court, though the statute indicates that she should have only chosen one option. *See* 28 C.F.R. § 14.9(b) ("Prior to the commencement of suit ... a claimant ... may file a written request with the agency for reconsideration of a final denial of a claim"). On October 14, 2005, the VA denied Plaintiff's claim for the second time, and on October 20, 2005, Judge Montalvo granted Plaintiff's request for voluntary dismissal of her suit pending in federal court. Subsequently, on May 18, 2006, Plaintiff filed the action now pending before this Court.

■■■ Under a straightforward application of the FTCA, Plaintiff should have filed suit within six months of the denial of her claim. The parties dispute which date of denial—February 4, 2005 or October 14, 2005—is the appropriate date from which to calculate the limitations period. However, this Court need not decide this issue at this time.

If the limitations period began to run on February 4, 2005, Plaintiff should have filed suit on or before August 4, 2005. Conversely, if the limitations period began to run on October 14, 2005, Plaintiff should have filed suit on or before April 14, 2006. Nonetheless, Plaintiff waited until May 18, 2006 to file the instant suit—well beyond both dates. Therefore, unless Plaintiff is entitled to an extension of the statute of limitations, her complaint is untimely and barred under section 2401(b).

#### 1. Section 108(a)

■■■ Defendant argues that section 108(a) does not operate to save Plaintiff's complaint because it is inapplicable to Chapter 13 debtors, like the Plaintiff, and there is no evidence that she brings suit on behalf of the Trustee who would be entitled to the benefits of section 108(a). Def.'s Mot. 8. Plaintiff responds by arguing

that Boyaki brings suit on behalf of the Trustee, and thus section 108(a) applies, allowing her two years within which to file suit, rather than six months. Pl.'s Resp. 2–3.

Section 108(a) provides that:

If applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the Trustee may commence such action only before the later of (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) two years after the order for relief.

11 U.S.C. § 108(a).

In other words, section 108(a) generally allows a Trustee or debtor-in-possession to commence an action in a non-bankruptcy proceeding within the later of the limitations period allowed for such proceeding or two years after the order for relief. *United States* ex rel. *Am. Bank v. C.I.T. Constr. Inc. of Tex.*, 944 F.2d 253, 259–60 (5th Cir.1991). The legislative history to section 108(a) indicates that it was intended to permit the Trustee, when he steps into the debtor's shoes, an extension of time to take action that is required to preserve the debtor's rights. H.R.Rep. No. 95–595, at 318 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6275. However, in the context of bankruptcies filed under Chapter 13, the extension offered by section 108(a) is available to Trustees only, and not to Chapter 13 debtors. *In re Bowen*, 2004 Bankr.LEXIS 356, at *25 (Bankr.N.D.Tex. Mar. 29, 2004) ("There is no statutory authority allowing a Chapter 13 debtor to utilize this tolling provision."); *see also In re Ranasinghe*, 341 B.R. 556, 564–68 (Bankr.E.D.Va.2006) (detailing the issue of whether a Chapter 13 debtor is entitled to the section 108(a) extension and concluding that he is not); *In re Gaskins*,

98 B.R. 328, 330 (Bankr.E.D.Tenn.1989) ("Section 108(a) specifically extends the time for the bankruptcy Trustee, not for the debtor who is in bankruptcy."); *In re Craig*, 7 B.R. 864, 865–66 (Bankr. E.D.Tenn.1980) (noting that section 108(a) was not meant to extend the time for debtors to file suit).

In the instant case, if the limitations period began to run two years "after the order for relief," meaning two years after Plaintiff filed for bankruptcy, then it began to run on June 20, 2005 and expires on June 20, 2007. *See Ramming v. United States*, 281 F.3d 158, 160, 164 (5th Cir. 2001) (treating the date of filing for bankruptcy as the date of the "order for relief"). Since Plaintiff filed suit on May 18, 2006, her Complaint is timely as long as she is entitled to this extended two-year statute of limitations under section 108(a).

Although Plaintiff asserts that Boyaki was hired by the Trustee to pursue the instant case on behalf of the Trustee, thus entitling her to section 108(a), she cites absolutely no evidence to support this proposition. Pl.'s Resp. 2; Pl.'s Second Resp. in Opp'n to Def.'s Mot. 1. Indeed, one of the only pieces of evidence to link Boyaki with the Trustee is an unauthenticated email dated February 23, 2006 between Johnson, Plaintiff's bankruptcy attorney, and the Trustee, in which Johnson asks the Trustee whether the Trustee will employ Boyaki as an attorney for the estate. Pl.'s Resp., Ex. B.

A March 7, 2006 letter from the Trustee to Boyaki similarly fails to make the necessary connection. In this letter, the Trustee informed Boyaki of the requirement that he obtain permission from both the United States Bankruptcy Court and the Trustee prior to pursuing the instant case. *Id.* In relevant part, the letter also states the following:

It has been brought to my attention that *you* represent Daisy D. Carr in a pending legal matter.... Be advised that any fees or costs incurred on behalf of the debtors during the suit *are the sole responsibility of the Debtor(s)*.

*Id.* (emphasis added).

Nothing in this letter indicates that Boyaki asked for and/or received permission from the Trustee to bring suit on his behalf. To the contrary, the letter appears to indicate to Boyaki that he needed to obtain the Trustee's permission but had not yet done so. The language regarding costs and fees also indicates that the Trustee had no intention of hiring Boyaki to pursue the case on behalf of the estate.

Finally, although Plaintiff points to the May 3, 2006 Order of the United States Bankruptcy Court in support of her position, the Order and corresponding motion provide evidence only that the United States Bankruptcy Court approved Boyaki's employment, and then only "as counsel for the Debtor in a civil case." *Id.* This Order, and the language of the March 7, 2006 letter, indicate that Boyaki does not bring this suit on behalf of the Trustee, but rather on behalf of the debtor-Plaintiff.

In a case such as this, "the debtor would be wise to have an order from the bankruptcy court showing that the debtor is suing for the benefit of the bankruptcy estate." *In re Gaskins,* 98 B.R. at 330 (providing this advice to attorneys who have proceedings pending in different courts and finding that because all proceedings in *Gaskins* were before a single judge, the court could determine whether the attorney was bringing suit for the benefit of the estate). This Court has combed the bankruptcy docket, as well as its own, and can find no evidence showing that Plaintiff brings the instant suit on behalf of the Trustee. Accordingly, the Court will grant Defendant's Motion. However, the Court will grant the Motion without prejudice and allow Plaintiff ten (10) days from the date of this order to provide this Court with evidence that, at the time Plaintiff brought suit, Plaintiff brought suit on behalf of the Trustee. *See In re Bowen,* 2004 Bankr.LEXIS 356, at *32 (discussing requirement that creditor sue in the trustee's name on behalf of the estate in order to use section 108(a)); *see also In re Ranasinghe,* 341 B.R. at 566 ("[I]t is an insufficient reason to allow a chapter 13 debtor to avail himself or herself of the benefit of § 108 simply because there is a benefit to the estate."); *In re Craig,* 7 B.R. at 865–66 (holding that trustee could proceed where the chapter 13 debtor could not). Otherwise, this Court will enter a final judgment and grant the Motion with prejudice.

## 2. Section 362

■ Defendant argues that section 362 does not operate to save Plaintiff's complaint because section 362 is meant to be used as a shield by a bankruptcy debtor, rather than as a sword by a debtor-plaintiff. Def.'s Reply 1. Although Plaintiff's argument is unclear, it appears as though Plaintiff argues that the United States Bankruptcy Court issued an automatic stay pursuant to section 362, which somehow justified her voluntary dismissal of the earlier action pending before Judge Montalvo. Pl.'s Resp. to Proposed Undisputed Facts II.1.; Pl.'s Resp. 1–2. Plaintiff also claims that this stay somehow provides "umbrella protection" for her. Pl.'s Resp. 2.

Section 362(a), which defines the scope of the automatic stay, provides that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303], or an application filed under section 5(a)(3) of the Securities Investor Protection

Act of 1970 [15 USCS § 78eee(a)(3)], operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding *against the debtor* that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, *against the debtor* or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act *to obtain possession of property of the estate* or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien *against property of the estate;*

(5) any act to create, perfect, or enforce *against property of the debtor* any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim *against the debtor* that arose before the commencement of the case under this title;

(7) the *setoff of any debt owing to the debtor* that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a corporate *debtor's tax liability* for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. §§ 362(a)(1)-(8) (emphasis added); *see also* H.R.Rep. No. 95–595, at 340–44 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296–6301.

The legislative history to section 362 indicates that it is "one of the fundamental debtor protections provided by the bankruptcy laws," designed to give "the debtor a breathing spell from his creditors." H.R.Rep. No. 95–595, at 340–44 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6296–6301. Section 362 is meant to stop "all collection efforts, all harassment, and all foreclosure actions," thereby permitting the debtor "to attempt a repayment or reorganization plan, or simply be relieved of the financial pressures that drove him into bankruptcy." *Id.* Section 362 also provides an orderly liquidation procedure under which creditors are treated equally, thus eliminating the race between creditors to act first and receive preferential payment. *Id.* "Without it, certain creditors would be able to pursue their own remedies against the debtor's property." *Id.*

Relying on this legislative history and the terms of the statute itself, several courts have held that the automatic stay provided in section 362 applies only to claims or litigation brought against the debtor, rather than claims or litigation brought by the debtor. *Carley Capital Group v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C.Cir.1989) ("We readily agree that this unambiguous provision 'by its terms only stays proceedings against the debtor,' and 'does not address actions brought by the debtor which would inure to the benefit of the bankruptcy estate.' Particularly in light of underlying legislative objectives, it could hardly be

read any other way."); *see In re Chesnut,* 422 F.3d 298, 300 (5th Cir.2005) ("The Bankruptcy Code's automatic stay is designed to ensure the orderly distribution of assets by temporarily protecting the property of the debtor's estate from the reach of creditors."); *Reliant Energy Servs. v. Enron Can. Corp.,* 349 F.3d 816, 825 (5th Cir.2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.' "); *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 995 (5th Cir.1985) ("A bankruptcy petition operates as a stay, applicable to all entities, of various types of actions to obtain affirmative relief against the debtor or his property.... The purpose of the automatic stay is to reinforce the jurisdiction of the bankruptcy court over the debtor's assets and forestall the race to levy upon or make claims against the debtor's property with possibly inconsistent results."); *In re Juneau's Builders Ctr., Inc.* 57 B.R. 254, 256 (Bankr.M.D.La.1986) ("Section 362(a) prohibits actions against the debtor, actions against property of the debtor, and actions against property of the estate. Since there was no act or an action against the Debtor, against the property of the Debtor, or against property of the estate, there was no violation of the stay.")

The instant case is brought by the debtor, and not against her. The plain language and legislative history of section 362 make clear that she is not entitled to an automatic stay with respect to the filing of her lawsuit against Defendant in this Court. Accordingly, section 362 does not save the timeliness of Plaintiff's complaint.

## III. CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. No. 15) is **GRANTED.** The above-captioned cause is hereby **DIS-** MISSED without prejudice to Plaintiff providing this Court with the evidence specified herein by no later than ten (10) days from the date of this Order. Should Plaintiff choose not to file any additional evidence or file insufficient evidence, this Court will grant the Motion and dismiss the case with prejudice.

**SO ORDERED.**